ELIZABETH BRINKLEY, Respondent, *v.* HUGH L. BRINKLEY,
Appellant.

Although the ecclesiastical law of England is no part of the common law
thereof adopted in this State, yet where, by our statutes, any part of the
jurisdiction exercised by the ecclesiastical courts of that country was given
to our courts, the settled principles and practice of those courts became a
precedent and a guide; and the grant of that jurisdiction carried with it,
by implication, the incidental powers indispensable to its proper exercise,
and not in conflict with our own statutory regulations.

Alimony and allowance for expenses will not be allowed in an action for
divorce brought by one claiming to be a wife, where marriage, in fact,
is denied by the answer, until the actual existence of the marital rela-
tion is proved to the satisfaction of the court, or is admitted. The
court, however, is not limited to the allegations of the complaint and
the denials of the answer. If other legitimate proofs are submitted
which make out, in the judgment of the court, a fair presumption of
the fact of marriage, it has power to make the allowances. (PECKHAM,
J., dissenting.)

For the purposes of temporary alimony it is not necessary that the fact of
marriage be so conclusively established as will be required for perma-

nent alimony or other ultimate purposes of the action. If the putative wife make out a reasonably plain case of the existence of the marital relation, she should be furnished with the means of temporary support and of conducting the suit until the truth or falsity of her allegations can be ascertained by the proofs formally taken in the case. (PECK-HAM, J., dissenting.)

Where, therefore, upon an application for temporary alimony and an allowance for expenses, the facts undisputed are such as that from them a presumption arises that the parties were married, so that the affirmative rests upon defendant to repel that presumption, the court has jurisdiction and power to grant the application, although marriage, in fact, is denied; and the opposing papers show facts irreconcilable with the existence thereof, or of matrimonial cohabitation. (PECKHAM, J., dissenting.)

A denial in the answer of the allegation of the complaint that the plaintiff was, at the time of exhibiting her complaint, an actual resident of this State, does not take from the court the power to make such allowances, nor does an allegation of the answer that, before the bringing of the action, plaintiff had brought another action for the same cause against defendant in a court of another State. These are issues in the cause, and the fact of marriage being established the court has power to take from the means of the defendant to enable plaintiff to establish her allegations. (The authorities, upon the subject of temporary alimony and allowances for expenses, collated and discussed.)

A judgment of a court of another State is only conclusive upon the parties where it is a definitive judgment upon the same cause of action upon the merits. An *interlocutory order upon a special application pending the suit,* is not conclusive upon a similar application in an action in this State.

(Argued June 18, 1872; decided November 12, 1872.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, affirming an order made at Special Term, granting alimony to plaintiff during the pendency of the action and an allowance for expenses.

The action was brought to obtain a limited divorce, with suitable maintenance, on the ground of abandonment by the defendant, and his neglect and refusal to furnish her support.

The complaint alleges that the plaintiff, at the time of the commencement of the action, was an actual resident of the city of New York; that the parties were married on or about the 14th of June, 1864, at that city; that on or about the 22d of March, 1869, at Memphis, Tennessee, the defendant

abandoned the plaintiff, and has ever since neglected and refused to provide for her.

The answer consists of a general denial, and an allegation that plaintiff is a resident of Memphis, Tennessee, and that there is pending, in the chancery court of Memphis, an action between these parties for the same cause. In addition to the pleadings, affidavits and other papers were read in support of and in opposition to the motion.

The facts presented upon the motion appear sufficiently in the opinion.

*Wm. Henry Anthon* for the appellant. No contract of marriage is proved by the evidence in this case. (*Cunningham* v. *Cunningham*, 2 Dow P. C., 482; *Clayton* v. *Wardell*, 4 Comst., 430; *Cunningham* v. *Burdell*, 4 Bradf., 482.) Plaintiff was not a resident of this State when she commenced this action, and an action for divorce, being a local action, must be brought where the plaintiff is domiciled. (*Somerville* v. *Lord Somerville*, 5 Vesey, 787; *Matter of Fitzgerald*, 2 Caines, 317; *Rosevelt* v. *Kellogg*, 20 J. R., 210; *Boardman* v. *House*, 18 Wend., 512; *Frost* v. *Brisbin*, 19 id., 14; *Chaine* v. *Wilson*, 8 Abb., 78, 1 Bosw., 673; *Fisk* v. *Chicago & R. I. R. R. Co.*, 53 Barb., 472.) The pendency of an action for divorce in another State is a bar to an action for the same cause in this State. (*Brent* v. *Armfield*, 4 Cr. C. C., 577.) The question of alimony is *res adjudicata*. The definitive judgment of a foreign court is conclusive between the same parties on the same subject-matter. (*Walsh* v. *Darkin*, 12 Johns. R., 101; *Bowne & Seymour* v. *Jay*, 9 id., 221; *Taylor* v. *Bryden*, 8 id., 175; *Monroe* v. *Douglas*, 4 Sandf. Ch., 126; *Lozier* v. *Westcott*, 26 N. Y., 146.)

*Miles Beach* for the respondent. An order granting alimony *pendente lite* is not appealable; it rests in the discretion of the court. (*Jones* v. *Jones*, 2 Barb. Ch., 146; *Abbey* v. *Abbey*, 6 How., 340; *Moncrief* v. *Moncrief*, 10 Abb., 315; *Griffen* v. *Griffen*, 23 How., 189.) Unless an errone-

ous exercise of this discretion is shown, the court will not disturb the order. (*Leslie* v. *Leslie*, 6 Abb. [N. S.], 193 ; *People* v. *N. Y. C. R. R. Co.*, 29 N. Y., 422 ; *Downing* v. *Marshall*, 37 N. Y., 394.)    Plaintiff was an actual resident of this State when the action was commenced.    (2 R. S. [Edm. ed.], 154 ; *Vance* v. *Vance*, 25 How. Pr., 495, 576 ; *Bartlett* v. *City of N. Y.*, 5 Sandf., 44 ; *Matter of Hawley*, 1 Daly, 531 ; *Chaine* v. *Wilson*, 8 Abb., 78.)    The pendency of the action between the same parties in Memphis was no bar to the action here.    (*Kelsey* v. *Ward*, 16 Abb., 98 ; *People* v. *Northern R. R. Co.*, 53 Barb., 98 ; *Monroe* v. *Douglas*, 1 Seld., 447, 452 ; *Ahrenfeldt* v. *Ahrenfeldt*, 1 Hoff. Ch., 50 ; *Ward* v. *Ward*, 5 Abb., [N. S.], 145 ; *Casey* v. *Casey*, 2 Barb., 59 ; *Pomeroy* v. *Pomeroy*, 1 Johns. Ch., 606 ; *Johnson* v. *Johnson*, 6 id., 163 ; *Smith* v. *Smith*, 4 Paige, 92 ; *McIntosh* v. *McIntosh*, 12 How. Pr., 289 ; *Hoffman* v. *Hoffman*, 35 id., 384 ; *Griffin* v. *Griffin*, 23 id., 183 ; *Henry* v. *Henry*, 17 Abb., 411 ; *Bowne & Seymour* v. *Jay*, 9 Johns., 221 ; *Walsh* v. *Darkin*, 11 id., 99 ; *Mitchell* v. *Bunch*, 2 Paige, 620 ; *Burrows* v. *Miller*, 5 How. Pr., 51 ; *Cook* v. *Litchfield*, 5 Sandf., 342 ; *Hecker* v. *Mitchell*, 5 Abb., 453 ; *Williams* v. *Ayrault*, 31 Barb., 364 ; *Lorillard Fire Insurance Company* v. *Meshural*, 7 Robt., 314 ; Story's Conflict of Laws, § 610.)    It was proper to read on the argument the exemplified copy of the order of discontinuance of the action in Tennessee.    (*Duncan* v. *Duboys*, 3 Johns. Cases, 125 ; *High* v. *Wilson*, 2 Johns. R., 46 ; *Burt* v. *Place*, 4 Wend., 501 ; *Armstrong* v. *Percy*, 5 id., 535 ; *Ritchie* v. *Putnam*, 13 id.; *Williams* v. *Wood*, 14 id., 126 ; *Dresser* v. *Brooks*, 3 Barb., 429 ; *Bank of Charleston* v. *Emeric*, 2 Sandf., 718 ; *Onderdonk* v. *Voorhies*, 2 Robt., 623 ; *Robert* v. *Good*, 36 N. Y., 408.)    Plaintiff made out a *prima facie* case of marriage and abandonment. (2 R. S. [Edm. ed.], 144 ; 2 Kent's Com., 87 ; Bishop on M. and D., §§ 78, 162 ; *Fenton* v. *Reed*, 4 Johns., 52 ; *Clayton* v. *Wardell*, 4 N. Y., 230 ; *Ferrie* v. *Pub. Admr.*, 3 Bradf., 151 ; *Tummalty* v. *Tummalty*, 3 id., 369 ; *Grotgen* v. *Grotgen*, 3 id., 373 ; *Cunningham* v. *Bur-*

*dell,* 3 id., 343; *Rose* v. *Clark,* 8 Paige, 574; *Matter of Taylor,* 9 id., 611; *Cheney* v. *Arnold,* 15 N. Y., 345.; *Hayes* v. *People,* 25 id., 390; *O'Gara* v. *Eisenlohr,* 38 id., 298; *Bissell* v. *Bissell,* 7 Abb. [N. S.,] 16; *Van Tuyl* v. *Van Tuyl,* 8 id., 5.) Plaintiff was not bound to prove her case on the application for alimony. *Snyder* v. *Snyder,* 3 Barb., 624; *Smith* v. *Smith,* 1 Eds. Ch., 255; *Herforth* v. *Herforth,* 2 Abb. [N. S.], 489.)

· FOLGER, J. This case was before the court formerly on appeal from an order adjudging the defendant in contempt for not rendering obedience to the order awarding to the plaintiff alimony *pendente lite,* and money for the expenses of the suit from the property of the defendant. (See 47 N. Y., 40.) We then held that for the purposes of that appeal we must assume that the court below had power to make the order and had well used it. The appeal now is from the order itself, by which alimony and expenses were granted, and the power of the Special Term to make that order is directly in question.

This is an action for a divorce, *a mensa et thoro,* on the ground of the abandonment of the plaintiff by the defendant, and of his neglect and refusal to provide for her. The complaint alleges that the plaintiff and defendant intermarried in 1864, and that the plaintiff is now the wife of the defendant. This allegation of the complaint is denied by the answer, and upon the pleadings the fact is at issue whether the parties to the action are or ever were husband and wife.

If the disposition of the questions raised by this appeal depended alone upon the pleadings in the case, it might be easily made. The allegations of the pleadings are direct, but most general in their character. There are in the case, however, a petition by the plaintiff and affidavits and other proofs in the nature of affidavits from both parties, which treat of the relations between them with much particularity, and

which are of importance in the determination of the points involved.

The order of the Special Term, brought under review, granted to the plaintiff a weekly allowance for her support and maintenance, to be paid by the defendant until the final determination of the action, and a sum in gross for her expenses in conducting the action.

It is proper for us to say here that we wish to be understood as expressing no opinion upon the merits of the main controversy or of what should be its final determination. We design to speak only of the power of the Special Term, with the facts before it, as they were presented in the papers, to grant the order appealed from.

The defendant contends that the Special Term had no power to grant this order, and he puts this claim upon the ground that the existence of the marital relation is denied, and its non-existence shown by the statements of the plaintiff herself, and that in such case alimony will not be granted *pendente lite.*

Some of the text books say that as the right to alimony can only result from the marital relation, a fact of marriage between the parties must be admitted or proven before there can be a decree for alimony *pendente lite.* (Bishop on Mar. and Div., § 570; Roper on Husb. and Wife, p. *310, note *k*.) And the ecclesiastical courts in England sometimes state the rule as broadly as that. In *Durant* v. *Durant* (1 Addams, 114; 2 Eng. Ecc. R., 43) it is said, "a general negative issue is then given to the libel, not even confessing the marriage, so that the court with no *constat* before it of a fact of marriage could allot the wife nothing on account or in the nature of alimony."

And in *Smyth* v. *Smyth* (2 Addams, 254; 2 Eng. Ecc. R., 293) it is declared that it is incompetent for the court under any circumstances to make a formal allotment to the wife of any sum in the nature even, or as on account of alimony, until a fact of marriage at least is proved against or admitted by the husband. It is to be observed, however, that in the last case, after this

strong statement of the rule, the court practically ignored it by recommending an allowance by way of alimony proportionate to the means of the husband, with an intimation that if its recommendation was not complied with it would take it into account when alimony in the progress of the cause came to be regularly allotted.

There is, however, a qualification annexed to this rule by other decisions. In *Bird* v. *Bird* (1 Lee, 209 ; 5 Eng. Ecc. R., 366), the husband brought suit to set aside his marriage as a nullity, by reason that, at the time of contracting it, there was living a husband of the wife by a former marriage. It was admitted on the part of the husband that there had been an actual ceremony of marriage in due form, followed by cohabitation and the birth of several children. The former marriage was not denied by the wife, and the issue in the case was whether the former husband was living at the date of the second marriage. In *Smith* v. *Smith*, cited in *Earl of Portsmouth* v. *Countess of Portsmouth* (3 Addams, 63 ; 2 Eng. Ecc. R., 428), and in the main case also, there had been a marriage in fact and in form, and an action was brought by the committee of the plaintiff to set aside the marriage as a nullity, in that the plaintiff was a lunatic, incapable of the contract of marriage and was the subject of the fraud of the wife. In these three cases the application of the putative wife was granted for money from the means of the husband to carry on the suit, and in two of them her right to temporary alimony is also asserted. And though it has been held that the ecclesiastical law of England is not a part of the common law of that country, and is no part of the common law thereof adopted in this State (*Burtis* v. *Burtis*, Hopk., 557), yet, when by our statutes any part of the jurisdiction exercised by those courts was given to our courts, the settled principles and practice of those courts became a precedent and a guide for our courts. (*Le Barron* v. *Le Barron*, 2 Am. Law. Rev., 212 ; S. C., 35 Vt., 365 ; *Griffin* v. *Griffin*, 47 N. Y., 134.) In *North* v. *North* (1 Barb., Ch. R., 241), the bill was filed by the husband to

annul the marriage on the same ground as that alleged in *Bird* v. *Bird* (*supra*). The defendant applied for alimony upon her affidavit, denying that the former husband was living at the time of the second marriage. It was held that for the purposes of the application the fact of marriage was admitted, and that the presumption was, that it was legal until the contrary should be established by the proofs in the cause. The chancellor there states, that the granting of an allowance for *ad interim* alimony and expenses of suit is not confined to cases in which both parties admit the alleged marriage to have been legal.

Now, in these cases from the English courts, and our court of chancery, it is apparent that if the allegations of the husband were true, the marriage was null and void, and there had not been in the inception á valid marriage between the parties, yet alimony *pendente lite*, and money for the expenses of the suit, were awarded to the wife. It was done upon the ground of a marriage *de facto* being admitted. And the issue being upon certain facts, dependent upon the truth of which it was whether there was or was not a marriage *de jure*, the ability should be given to the wife to maintain her negative of the allegation of those facts. They are, then, authorities to this extent, that where it appears to the court from the express admissions of the parties, or from the allegations of one not denied by the other, that there has been the form of a marriage between them, and the question at issue is whether the facts and circumstances of the case will show it not a marriage *de jure*, temporary alimony and money for the expenses of the suit will be awarded for the putative wife from the means of the alleged husband, although he denies the existence of the marital relation.

There is one case in the late Court of Chancery which goes farther than this. In *Smith* v. *Smith* (1 Edw., 255), a bill was filed by the wife against the husband for a divorce *a mensa et thoro*, on the ground of cruelty. It distinctly set forth the time and place of marriage, and the name of the minister who officiated thereat. It is to be inferred also that

it alleged " cohabitation and living together " as husband and wife. The bill was sworn to. The defendant put in a sworn plea, without answer, explicitly denying ever having been married to the complainant. On an application by the complainant for temporary alimony and money to carry on her suit, it was granted by the vice-chancellor. The court cited *Smyth* v. *Smyth* (*supra*), as a cause where temporary alimony was granted in effect, though not in form, and holds the defendant's plea insufficient to prevent the granting of the application. The report of the case is short, and reasons for the judgment are not given *in extenso*. Notice is taken that the defendant did not deny cohabitation nor living together with the complainant. This circumstance standing admitted was deemed worthy of consideration, as in truth it is. For a marriage in fact may be presumed from continued matrimonial cohabitation, the acknowledgment by the parties that they are husband and wife, the recognition by each other as such, and general reputation thereof. (*Rose* v. *Clark*, 8 Paige, 574; *In re Taylor*, 9 id., 611; *O'Gara* v. *Eisenlohr*, 38 N. Y., 296.) And in *North* v. *North* (*supra*), the chancellor presents such a presumption as one of the considerations moving him to his judgment. There are certain needed and salutary limitations and restrictive safeguards which the courts have attached to this rule, which will be noticed further on.

As the defendant in *Smith* v. *Smith* (1 Edw., *supra*) did not deny the facts from which an actual marriage might be inferred, though he did deny a marriage with form and ceremony, might not the court well hold that for the purposes of the application for temporary alimony and expenses of the suit there was *prima facie* the existence of the marital relation, though not formal in its inception?

Thus viewing the case of *Smith* v. *Smith*, it harmonizes with *North* v. *North* and the cases from the English ecclesiastical courts. If it is not to be thus viewed, it is a direct decision that a denial of the marriage relation by the husband is not ground for refusing an application by the putative wife

for alimony. And in *Vreeland* v. *Vreeland* (3 Green [N. J.] Eq. Rep., 43), where alimony was refused, the fact of marriage being denied in a sworn answer, it is intimated that if there had been proof of the defendant's cohabitation with the complainant as his wife, or his public acknowledgment of her as such, alimony could have been allowed.

At all events, the authorities cited are ample to sustain this proposition: that where there has been a marriage in fact, though its commencement was not according to the decent and recognized forms and ceremonies usual in society, and which, though not indispensable for its validity, are yet sanctioned by law; in an action by the wife for divorce or by the husband for a decree that the marriage is null, in which the putative wife avers the existence and legality of the marriage, though the alleged husband denies it; the court may, in its discretion, allow to the putative wife temporary alimony and money to carry on the action from the means of the alleged husband.

And the principle at the bottom is this: Where marriage in fact being denied, the affirmative is upon the party claiming to be the wife to show that an actual marital relation ever existed; there alimony will be denied until that fact is proven to the satisfaction of the court, or is admitted; for it is upon the existence of that relation alone that the right to alimony depends. Where an actual marital relation has been admitted or shown, and its existence in law is sought to be avoided by some fact set up by the husband, and it devolves upon him to show that fact; there alimony will be granted until that fact is shown; for the relation actually exists upon which the right to alimony depends, and the object of the litigation is to annul that actual relation by showing some other fact, the existence of which is denied. It may be said, too, that for the purposes of an application for temporary alimony there will not need that the fact of marriage be so conclusively established as for the purpose of permanent alimony, or any other ultimate purpose of the action. It is for the interest of society and in aid of public policy that where

the married relation has been in fact assumed, it should not easily and capriciously be laid aside; and where it is averred by the putative wife and denied by the alleged husband, if she makes a reasonably plain case of its existence, she should be furnished with means of temporary support and of conducting the suit until the truth or falsehood of her allegations can be ascertained by the proofs formally taken in the case. (See *North* v. *North, supra,* p. 244; *Purcell* v. *Purcell,* 4 Hen. & Munf., 507; *Herforth* v. *Herforth,* 2 Abb. Pr. R. [N. S.], 483.) So far have the courts carried this idea that even after the verdict of a jury upon a feigned issue, finding the wife guilty of adultery, arrears of alimony accruing after verdict and up to date of decree were ordered to be paid. (*Stanford* v. *Stanford,* 1 Edwards, 317.) And further it may be said, that any facts and circumstances being shown which are sufficient for a court to presume therefrom an actual marriage, they are also sufficient for a court thereon to found an order granting temporary alimony, though other allegations which are at issue, once being established, would repel such a presumption.

Hence in an application for temporary alimony and the expenses of the action, although there may be in the answer a general denial of the existence at any time of the marital relation, the court has the power from the affidavits and other papers presented to it to pass upon the question for the purposes of the application, and it is not bound down to the allegation of the complaint and the denial of the answer if other papers or proofs are submitted to it; and though the denial of the answer, if standing alone, would bring the case within the rule that where no marital relation is admitted or proven there is no right to alimony; yet if the matters contained in other papers or shown by legitimate proofs before the court make out in the judgment of the court a fair presumption of a fact of marriage, it has the power to grant alimony pending the action and expenses of the action.

It remains to be seen whether the facts admitted or shown

beyond dispute, in the petition and affidavits in this case, are such as to meet these requirements.

The complaint and the answer are destructive of each other, for the allegations of one are neutralized by the denials of the other.

The petition of the plaintiff alleges a marriage contract in New York city between the parties, without witness or ceremony, or solemnization with any civil or religious rites, but a simple contract of the parties *per verba de presenti*, followed by actual consummation, cohabitation as husband and wife, and recognition and acknowledgment of each other as such to mutual acquaintances and friends.

The deposition or affidavit of the defendant denies the contract of marriage, and the cohabitation together as husband and wife, and " that, at any time or place, he, by word or act, gave the least foundation for the supposition or charge that the plaintiff became his wife, or that, in any manner, shape or form, he was ever married to the plaintiff, in New York or elsewhere."

The petition sets out the particulars of the alleged contract. It also sets out the particulars of the time and place of the recognition and acknowledgment of each other as husband and wife, and specifically designates the places and times at which, and the persons to whom the defendant introduced the plaintiff as his wife, and acknowledged her as such, and alleges the general reputation which existed of their matrimonial connection. The petition is unsupported in its statement that there was a marriage contract between the parties, but is corroborated by numerous explicit and reliable affidavits in its other statements above noticed.

The deposition of the defendant does not, nor does any sworn statements of the defendant deny, in particular averments of denial, that he did at the times and places, and to the persons named in the petition and in the corroborating affidavits, introduce and acknowledge the plaintiff as his wife, or that they passed before many of their acquaintances at public hotels and boarding-houses as such, or that they

cohabited together ostensibly as husband and wife, or that such was the reputation of the relation existing between them.

It would be tedious to go into a minute recapitulation of the statements made to this effect in these affidavits. One of them may be noticed, which is perhaps the strongest and most specific of all; that of Alexander B. Mott, known as a highly respectable physician practicing in New York city, who says therein that he was called professionally to the plaintiff, and found her in bed; that the defendant was present in her room, together with the mistress of the boarding-house; that then and uniformly on subsequent occasions the defendant spoke of plaintiff as his (the defendant's) wife; that he (Mott) addressed them as Mr. and Mrs. Brinkley; that defendant on another occasion consulted him (Mott) professionally, and then stated that the plaintiff was his (the defendant's) wife, but that for family reasons it was not thought proper to announce it. These particular statements are not denied by the defendant.

The defendant, on his side, produces the affidavits of persons who make strong representations with much minuteness of the declarations of the plaintiff, and her conduct in accordance therewith, irreconcilable with the existence of the fact of marriage between the parties, or of matrimonial cohabitation, and consistent with the allegation of the defendant, that the relation between the parties was commenced and continued for meretricious purposes. There are also letters from the plaintiff, as is alleged, which, read in the light of these affidavits, are condemnatory of her.

These papers, affidavits and proofs are mainly of two classes, viz.: Those which are brought before the court by the plaintiff have been served upon the defendant and brought to his knowledge, and he has had opportunity to answer them as specifically as he saw fit; those which are brought before the court by the defendant, except the answer in this action, and the answer in the action in the court of Tennessee, do not appear to have been served upon the plaintiff or to have

come to her knowledge until read on the motion, nor does it appear that she has had opportunity to answer or deny the details contained in them. The general purport of them, that she was of unchaste character and person, and that her relation with the defendant was libidinous and unsanctioned by law, she has in effect anticipated in her petition, and negatived. (See *Wood* v. *Wood*, 2 Paige, 108, 114.)

It was, then, the effect of all these papers that it was admitted by the defendant, before the Special Term, that these parties did cohabit and live and lie together, justifying, in the eyes of acquaintance and of reputable moral people, that mode of life, in that there was a matrimonial relation existing between them; that they did acknowledge that they were husband and wife, and did recognize and introduce each other as such; that they were received as such by reputable acquaintances and friends, and that such was their common reputation.

From these facts, admitted or proven, the court might presume an actual valid marriage. The language of one authority is, that it was *competent to prove* the marriage by the exhibition of such facts. (*O'Gara* v. *Eisenlohr*, *supra*.)

The learned counsel for the defendant, with a commendable earnestness, urged upon the court not to sanction, by their judgment in favor of the plaintiff, the notion which he, perhaps correctly, averred was too prevalent; that in the State of New York, as no form, nor ceremony, nor civil nor religious rite was essential to the validity of a marriage, so any cohabitation of man and woman, no matter how or with what motive begun, might, by the false assumption of the marital relation some time continued, by the false acknowledgment and recognition of each other as husband and wife for a space kept up, and by an ill-founded general reputation, grow into the real valid and lawful state of matrimony, with all its reciprocal rights, liabilities, duties and obligations.

We shall not relax any rule or requirement which has been set up for a validity of a marriage. The law is well settled that a man and woman, without the presence of a witness,

without the intervention of minister or magistrate, by words of present contract between them, may take upon themselves the relation of husband and wife, and be bound to themselves and to society as such. And if after that the marriage is denied, proof of actual cohabitation as husband and wife, acknowledgment and recognition of each other, to friends and acquaintances and the public as such, and the general reputation thereof will enable a court to presume that there was, in the beginning, an actual *bona fide* and valid marriage.

We are aware, however, that the wise caution of the courts has set hedges about this rule. To presume, from the fact of cohabitation, that there has been an actual marriage, it must be matrimonial and be so begun, and not illicit. It is not the fact alone which raises the presumption, but the character of the fact. The parties must not only live together as do man and wife, but to become man and wife must be a purpose in beginning so to live, and they must hold themselves out to the world as thus related. (*Rose* v. *Clark, supra*.) And the courts will not, by testimony that is not clear and explicit, that is not general and supported by other circumstances, nor by reputation for marriage that is divided, raise such a presumption. (*Clayton* v. *Wardell*, 4 Comst., 230.) And the presumption is weakened where the relation of the parties is secret or concealed, unless an adequate and controlling motive is presented. (*Cunningham* v. *Burdell*, 4 Bradf., 482.)

And when this case comes to its final hearing and disposition, these restrictions and safeguards should and will be recognized and adhered to.

The question now before us, however, is not whether upon the proofs as shown by the parties a final judgment should be rendered, that there has been an actual valid marriage between the parties, and whether a limited divorce should be adjudged with a permanent, separate maintenance for the plaintiff to be provided by the defendant.

The question now is, do the proofs of the parties give reason to apprehend that upon a trial of the issues between them

there is the fair probability that the plaintiff will maintain her allegations.

This question is to be determined for the purposes of this application. It is one in which the public is interested as well as the parties. If there has been a binding contract of marriage, it is of public as well as private interest that it be shown and maintained. It is evident from what is before us, that it can be shown and maintained only by professional skill and vigor, to secure which to the plaintiff pecuniary means are needed. She is without such means. And if the defendant is her husband he should provide them.

There are facts alleged which are disputed. It is upon these that the strength of the defendant's case rests. There are facts in the case which are undisputed. They are such that from them a presumption arises that the parties were married. And though the complaint in its general allegation of a marriage is generally denied by the answer, and resting upon these alone the general rule would defeat the plaintiff's application, yet the petition, affidavits and other papers in the case furnish the court with fuller details and particulars of the case and of the relations of the parties, and, from the undisputed facts therein showing in presumption an actual marriage, bring into operation in aid of the plaintiff the qualification of the general rule which has been stated above.

It is as if in the first instance the plaintiff in her complaint had alleged the facts and circumstances from which an actual marriage, was to be inferred, and had also alleged the marriage contract as she has in her petition; and as if the defendant had in his answer denied the contract of marriage, but admitted by not denying them, the facts and circumstances presumptive of marriage, and alleged of them that, though apparently proper and rightful, they were but the cover for a meretricious and libidinous connection, begun and continued in impurity. It is evident that the issue would be in the main upon the character of the connection between the parties, and whether this seeming marital relation began in an honorable and legal contract of marriage, though entered into without

witness, form or ceremony of solemnization; or whether it was the unsanctioned for gathering of a lecher and a wanton.

It is evident that the affirmative of this issue would be upon the defendant, so far as to repel the presumption of an actual marriage to be made from the facts and circumstances which stand undisputed upon the papers. *Prima facie*, then, there would exist the relation of actual mariage, and the right to alimony *pendente lite*, and money to contest the allegations which, if established, would show no marriage.

It follows, then, that the court below had jurisdiction and power, so far as the facts of the case are concerned, to grant the application of the plaintiff.

This being so, the statute (2 R. S., 148, § 58) gives, in express terms, the power to the court, in such a case as this, to require the husband to pay any sums necessary to enable the wife to carry on the suit during its pendency. And, though the statute does not, in terms, give to the court the same power as to an allowance for her support and maintenance, pending the controversy, yet this power is based upon the general equitable jurisdiction of the court, and upon the ground that when the statute conferred jurisdiction upon the court in those actions for divorce which, by the English law, are solely cognizable in the ecclesiastical courts, the grant of that jurisdiction carried with it, by implication, the incidental powers which were indispensable to its proper exercise, ·and not in conflict with our own statutory regulations on the same subject. See *Griffin* v. *Griffin* (47 N. Y., 134), where this subject is elaborately considered.

2d. The defendant makes another point, that the plaintiff was not an actual resident of this State when she exhibited her complaint.

The language of the statute is: "If a married woman, at the time of exhibiting a bill against her husband,  *  *  * shall reside in this State, she shall be deemed an inhabitant thereof, although her husband may reside elsewhere" (2 R. S., 147, § 57); and an action may be entertained for a limited divorce, when the marriage shall have taken place within this

state, and the wife shall be an actual resident at the time of exhibiting her complaint. (Id., 146, § 50, sub. 2.)

The complaint alleges that the plaintiff was, at the time of the commencement of this action, an actual resident of the city of New York. If there was a marriage, it took place in that city.

The answer denies all the allegations of the complaint.

It is, then, one of the issues in the case, whether the plaintiff was an actual resident or not of this State at the time of exhibiting her complaint. The denial thereof in the answer does not of itself take from the court the power of awarding temporary alimony and expenses of the suit, no more than does a denial of the allegation of abandonment and neglect, and refusal to support. These are of the issues in the case. If the plaintiff is the wife, in fact, of the defendant, the court has the power to take from his means to enable her to maintain her allegations.

Besides that, actual residence is capable of change in a brief space, and it might be that, though all that is shown in the affidavits and papers of the defendant is true, the plaintiff, after the dates spoken of therein, and before the commencement of this action, did form the intention, and carry it into performance, of changing her residence from Memphis to New York city.

3d. The defendant makes another point, that the plaintiff had, before the bringing of this action, brought another action against the defendant in a court of the State of Tennessee, which is still pending and undetermined.

It appears that the judgment prayed for in that action is for a divorce *a vinculo*, or for a limited divorce, and on either judgment an allowance for permanent alimony. And it alleges the adultery of the defendant as a ground for a judgment.

If it be conceded, notwithstanding some difference in the allegations of the two complaints, and the difference in the prayer for judgment, in the two, that the two actions are identical, still the same answer to this point arises. This is

one of the issues in the case, and is not of conclusive weight on a motion of this kind. Upon the trial, the plaintiff may show a discontinuance of that action, or other reason, why it may not interfere with the courts of this State taking jurisdiction of the controversy.

4th. The defendant makes another point, that the question of alimony is *res adjudicata*, in consequence of a decree in the court of Tennessee denying it to the plaintiff.

It is the rule that the definitive judgment of a court of another State between the same parties upon the same cause of action, upon the merits of the case, is conclusive. But it must be a definitive judgment on the merits only. ( *Walsh* v. *Durkin*, 12 J. R., 99; *Lazier* v. *Westcott*, 26 N. Y., 146.)

But the decree of the court in Tennessee was not a final decree adjudicating definitively between the parties the merits of the case. It was interlocutory. Its determination of the question before it did not settle and adjudge finally the rights of the parties. It was upon a special application pending the suit, which by our practice might, on leave had, be renewed on a new state of facts presented.

It would be too much to say that the decision there of this interlocutory motion or application was to be held conclusive upon the parties at any other stage of the main controversy between them, in another State and before another tribunal.

We are therefore of the opinion that the Special Term had power to entertain the application of the plaintiff for alimony *pendente lite*, and for money to defray the expenses of the action, and had power to pass upon the facts presented in the papers before it, and from the facts which were undisputed had power to award to the plaintiff temporary alimony and money for costs of suit. What amount it should give was discretionary. We are free to say that under the circumstances of the case, we should have confined the plaintiff to the smallest sum. But with the discretion of the court below we cannot interfere.

The order appealed from must be affirmed, with costs to the respondent.

The plaintiff claims that the order complained of is not appealable to this court. We do not pass directly upon that question. If the granting of the order was entirely discretionary, and there has been no abuse, then it is not appealable. If there was no power to grant it, it was appealable.

We have preferred to pass upon the merits of the question, and to affirm the order.

All concur, except PECKHAM, J., dissenting.

Order affirmed.