ERIE COUNTY.—HON. ZEBULON FERRIS, SURROGATE.—
June, 1881.

## BYRNES v. DIBBLE.

*In the matter of the application for letters of adminis-
tration upon the estate of JOHN W. BYRNES, de-
ceased.*

Although no form, rite or ceremony is essential, in this State, to the validity
of a marriage, it does not follow that any cohabitation, with whatever
motive begun, may, by the false acknowledgment of the marital rela-
tion, kept up for a time, grow into a lawful state of matrimony.   To
raise a presumption of the fact of marriage, from that of cohabitation,
the latter must be matrimonial, and not illicit, in its inception.

The petitioner, having applied for letters of administration upon the estate
of decedent, a tug-captain, who died suddenly in February, 1881, leav-
ing brothers and sisters his only next of kin,—on the ground that she
was his widow, it appeared that she and decedent began to cohabit in
the latter part of 1879; that he took her to a respectable boarding-
house, introduced her in society as his wife, took out a policy of life
insurance in her name as his wife, and wrote her a letter, signing him-
self her husband.   In May, 1880, they having had an affray, she sued
him for an assault in her own name, which she stated to be Helen Dib-
ble.   This action was settled, but, before its termination, he resumed
his relations with her, again introduced her as his wife, and lived with
her until his death.   It further appeared that petitioner had stated, on
one occasion, that decedent had been visiting her; also that decedent,
in admitting, when asked, that he was married, had made inconsistent
statements as to the length of time since his marriage, and had once
denied that petitioner was Mrs. Byrnes; also that he had introduced
another woman as his wife.   And contestants adduced evidence tend-
ing to show that petitioner was a woman of loose character, who had
been married, had a child, left her husband, and gone to live with an-
other man, before living with decedent.   There was no proof of any
express marriage contract.

*Held,* that the contradictory declarations of decedent, the character and
conduct of the parties, and the many suspicious circumstances which
petitioner did not controvert, led to the conclusion that she was not the
widow of decedent, and that her petition must be denied.

THIS was an application by one styling herself Helen A. Byrnes, and claiming to be the widow of decedent, John W. Byrnes, late of Buffalo, for letters of administration of his goods, etc. ; opposed by decedent's brothers and sisters, his only next of kin.

The facts appear sufficiently in the opinion.

VILLIAM & POTTER, *for petitioner.*

LEWIS & RICE, *for next of kin.*

THE SURROGATE.—The verified petition in the matter alleges that the petitioner is the widow of the deceased, and that he left brothers and sisters, his sole next of kin. The latter contest the application, alleging that the petitioner is not the widow of the deceased ; that he was never married to her.   On the hearing, no express contract of marriage was proven, but the petitioner, to sustain the allegation of the petition that she is the widow of the deceased, proved by a number of witnesses facts tending to show that she was married to and lived with him, as his wife, for thirteen months, and down to the time of his death, which occurred suddenly on February 8, 1881, by the falling of the N. Y. C. R. R. depot.   She also introduced in evidence a letter from the deceased, written a short time before his death, in which he signs himself as her husband.   On the other hand, the contestants offer evidence tending to show that, before living with Capt. Byrnes, the petitioner was a woman of loose character ; that she had been married and had a child, but had left her husband and gone to live with another man, and finally lived with the deceased ; and that, after the petitioner and the deceased had begun to live together, after he had repeatedly introduced her to respect-

able people as his wife, and had taken her to a respectable boarding-house and lived there with her as his wife, and had taken out life insurance in her name as his wife, they had had some trouble and she had brought a civil suit against him for $500, damages for assault and battery, in her name as Helen Dibble, and had sworn to the complaint by that name. The parties began to live together in December, 1879, or January, 1880. The suit was brought and the complaint sworn to, May 18, 1880, and the amended complaint to the same effect was sworn to, June 11, 1880. The petitioner then proved that the suit was settled, and the parties resided together as husband and wife until the death of Captain Byrnes; that, during the latter period, he frequently held her out to be, and introduced her as, his wife; that, after his death, his body was taken to her house and buried from there; and this evidence is relied upon, to sustain the allegation of the petition, that the petitioner is the widow of the deceased.

In Brinkley *v.* Brinkley (50 *N. Y.*, 197), Judge FOL-GER says: "The law is well settled that a man and woman, without the presence of a witness, without the intervention of a minister, or magistrate, by words of present contract between them, may take upon themselves the relation of husband and wife, and be bound to themselves and to society as such; and if, after that, the marriage is denied, proof of actual cohabitation as husband and wife, acknowledgment and recognition of each other to friends and acquaintances and the public as such, and the general reputation thereof, will enable a court to presume that there was in the beginning an actual *bona fide* and valid marriage.

"We are aware, however, that the wise caution of

the courts has set hedges about this rule.    To presume, from the fact of cohabitation, that there has been an actual marriage, it must be matrimonial and so begun, and not illicit. ˙ It is not the fact alone which raises the presumption, but the character of the fact.    The parties must not only live together as do man and wife, but to become man and wife *must be a purpose in beginning so to live;* and they must hold themselves out to the world as thus related ; and the courts will not by testimony that is not clear and explicit, that is not general and supported by other circumstances, nor by reputation for marriage that is divided, raise such a presumption."

In this case, we first hear of the petitioner and the deceased together in the summer and fall of 1879, and later, about the first of January, he is introducing her in respectable society and living with her as his wife, which relation continues to exist down to about the opening of navigation, when, as the result of an affray between them, she brings an action against him in her name of Helen Dibble, and swears to the complaint ; this is on May 18, 1880.    The wording of the verification is : "Helen Dibble being duly sworn says that she is the plaintiff named in the foregoing complaint ; that she has heard said complaint read and knows the contents thereof, etc.," and it is signed by her "Helen Dibble." Later, and on June 11, 1880, an amended complaint to the same effect is signed and sworn to by her, the verification being worded in the same manner, and the signature being the same.    The allegations of the complaint are, that he struck the plaintiff and knocked her down and kicked her ; these assaults took place on the 2d, 3d,

and 8th days of May, 1880 ; and she demands judgment for $500 damages.

Prior to this time, and in the month of April, 1880, the petitioner called on Mr. Robbins, who was Byrnes's attorney, for counsel ; and then stated that her name was Helen Dibble, and that Byrnes had been visiting her, and that one Anna Williams was annoying her. It appears, by M. P. Robbins's testimony, that the suit by Helen Dibble against Byrnes was settled September 28, 1880 ; but before the suit is settled he resumes his relations with her, and introduces her as his wife, and lives with her, as before, and down to the time of his death in February, 1880. In the meantime, about the month of May, 1880, Dr. Carl H. Guess went out on Captain Byrnes's tug, and, evidently having some doubts in the matter, asked Byrne, "John, are you married?" He says, "Yes (and kind of laughed), I have been married over a year." Afterwards, in the fall, after the tug was laid up, Captain Scanlon had a conversation with Byrnes, at his home on Ohio street, and asked him, "How long have you kept house, John?" I spoke in that way to him: He says, "Since I got off the tug." Then I turned round to him and looked at him, and says I, "John, are you married?" He said, "Yes." I says, "How long have you been married?" He says, "Five or six months, about that." Both these witnesses were evidently skeptical ; and on the cross-examination of Patrick O'Hara, a witness for the contestants, he swears, "I know he told me once she wasn't Mrs. Byrnes ;" and the weight that might attach to Byrnes introducing the petitioner as his wife is done away with by the fact that he had also been in the habit of introducing the woman Williams as his

wife.   Taken altogether, the case seems to be one of those which is without the hedge set around the rule laid down by the court of appeals.   As Judge FOLGER says, in the opinion cited, there would seem to be a notion too prevalent that, in the State of New York, as no form nor ceremony, nor civil nor religious rite is essential to the validity of a marriage, so any cohabitation of a man and woman, no matter how or with what motive begun, may, by the false assumption of the marital relation some time continued, by the false acknowledgment and recognition of each other as husband and wife, for a space kept up, and by an ill-founded general reputation, grow into the real, valid and lawful state of matrimony, with all its reciprocal rights, liabilities, duties and obligations. There is an air of the suspicious, all about the present case, which leads me to think it is one of the latter class of cases.   There is no proof of any marriage contract. The relationship between the parties, when begun, was an illicit one.   The introduction and holding out of the petitioner, as his wife, by Byrnes, from December to May, is shown to be false.   The contradictory declarations of Byrnes to various persons, as to the time of his marriage, are consistent with his other declaration that the petitioner is not Mrs. Byrnes ; and the character and conduct of the parties at so recent a date as to make them fresh in the memory of all the parties and witnesses, and the many suspicious circumstances connected with and surrounding them, which the petitioner does not take the trouble to deny ; all these lead me to the conclusion that the petitioner is not the widow of the deceased, John W. Byrnes.

The prayer of the petitioner must be denied.

Ordered accordingly.