GEORGE W. WILLIAMS *vs.* WILLIAM H. HERRICK, Admr. *et al.*

PROVIDENCE—JULY 15, 1899.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Evidence. Presumption of Marriage from Cohabitation.*

While a certain presumption of marriage in cases involving legitimacy arises from long-continued cohabitation of the parties, yet, in order to constitute evidence from which a marriage may be inferred, the origin of the cohabitation must have been consistent with a matrimonial intent, and the cohabitation must have been of such a character and the conduct of the parties such as to lead to the belief in the community that a marriage existed, and thereby to create the general and uniform reputation of a marriage.

BILL IN EQUITY to avoid a trust. Heard on question of legitimacy. For previous opinions in this case see 18 R. I. 120, and 19 R. I. 197.

MATTESON, C. J. We do not think the evidence establishes the existence of a marriage between Moses Olney and Martha W. Olney prior to the ceremonial marriage between them on November 4, 1817, a short time before the death of Moses. It is not shown that any contract of marriage preceded the cohabitation, which appears to have begun on the death of Gideon Olney, the father of Moses, in 1798, and to have continued until the death of Moses in November, 1817. But we are asked to infer a marriage from such cohabitation, the birth of children during it, and the fact that these

children and their mother were known by the name of Olney.

(1) There is, doubtless, as contended in support of the claim of marriage, a certain presumption of marriage, especially in cases involving legitimacy, arising from long-continued cohabitation. But in order to constitute evidence from which a marriage may be inferred, the origin of the cohabitation must have been consistent with a matrimonial intent, and the cohabitation must have been of such a character, and the conduct of the parties such, as to lead to the belief in the community that a marriage existed, and thereby to create the reputation of a marriage. *Beneficial Ass'n.* v. *Carpenter,* 17 R. I. 720 ; *Commonwealth* v. *Stump,* 53 Pa. St. 132 ; *Appeal of Reading Fire Ins. Co.,* 113 Pa. St. 204 ; *Brinkley* v. *Brinkley,* 50 N. Y. 184 ; *Wallace's Case,* 49 N. J. Eq. 530 ; *McKenna* v. *McKenna,* 73 Ill. Ap. 64 ; *Stans* v. *Baitey,* 37 Pac. Rep. 316. Inasmuch as the matters which are the subject of investigation had their beginning a century ago and ended in the early part of the present century, the ascertainment of the facts concerning them is attended with great embarrassment. There are no contemporaneous witnesses. The court is obliged to depend upon the uncertain light of family tradition. Considerable testimony of this kind has been introduced to the effect that prior to the ceremonial marriage it was not considered in the family that Moses and Martha were married, and we think that this view is confirmed by a consideration of the entire evidence. In support of the claim of a marriage prior to the ceremonial marriage, it is contended that Moses desired to marry Martha, who was his cousin and living in his father's family as a household servant ; that his father opposed the marriage because of the inferior social station of Martha, and threatened to disinherit Moses if he persisted in his purpose of marriage. But if this be the fact, and Moses and Martha had a matrimonial intent, it is difficult to understand why, on the death of the father, when, so far as appears, the cohabitation began, Moses and Martha should not have been regularly married and thus placed their relations beyond a doubt. We cannot help feeling that the association between Moses and Martha was not

of the character now claimed for it, and that the father's disapproval of it was for that reason. This view is strengthened by the taunts, which the testimony shows were uttered by other school children to the children of Moses and Martha, that their father and mother were not married ; by the fact that Martha led a secluded life, and that there appears to have been but little association between her and the members of the Olney family until after the ceremonial marriage ; and, finally, by the fact of the ceremonial marriage. For, even if it be conceded that this marriage was at the suggestion of Mr. Pabodie, and that it was entered into to enable Martha and her children to receive the property of Moses, which, in view of his power to give it to them by will, as he did, is not a very satisfactory explanation, it is an admission of the strongest character that their previous relations had not been those of marriage, but illicit. And the fact that a marriage was deemed necessary by a friend, who advised it, is evidence that there was no general and uniform reputation in the community that they were married. To prove a marriage by cohabitation and reputation, the reputation must be general and uniform. *Clayton* v. *Wardell*, 4 N. Y. 230, 236 ; *Brinkley* v. *Brinkley*, 50 N. Y. 184, 198 ; *Barnum* v. *Barnum*, 42 Md. 251, 297 ; *White* v. *White*, 82 Cal. 427.

We also think that the great preponderance of evidence is in favor of the claim that Martha Olney was Martha Williams, the daughter of Martha Olney Williams and Zebedee Williams, and not Martha Rhodes, the daughter of Peleg Rhodes. We have reached this conclusion independently of the paper entitled " Monumental Genealogy," offered by the complainants, which, though we are inclined to consider it admissible as evidence, was objected to by the Rhodes claimants as incompetent.

*Francis Colwell, Walter H. Barney and Albert A. Baker,* for complainants.

*Tillinghast and Tillinghast, Comstock and Gardner, Lewis A. Waterman, Edwards and Angell, Frank B. Towman and Edward S. Hopkins,* for respondents.