JOHN R. EMERY, FREDERIC W. STEVENS, EUGENE STEVENSON,
LINDLEY M. GARRISON, EDMUND B. LEAMING, JAMES E.
HOWELL AND EDWIN R. WALKER, VICE-CHANCELLORS.

---

LAURA JANE ORAM

*v.*

THOMAS W. ORAM.

[Decided March 15th, 1910.]

1. In a suit for maintenance by a woman against her alleged husband, evidence *held* to show such a *prima facie* case of recognition of the marriage relation with defendant after the alleged ceremony, as to entitle her to an allowance *pendente lite* for the expenses of her suit to establish the marriage.

1

2. In a suit for maintenance by a woman against her alleged husband, where for over ten years the complainant had received no support from defendant for herself and child, and defendant denied under oath the marriage ceremony sworn to by complainant, alimony *pendente lite* will be denied because of the long delay of complainant in filing the bill.

3. Where a bill for alimony is based on an actual marriage, and, on application by the wife for temporary alimony and expenses, the actual marriage set up is denied by the alleged husband, the wife must establish, by evidence other than her own, the existence of the marriage relation. But the mere uncorroborated denial of the marriage by the defendant under oath is not of itself, under all circumstances, sufficient to deprive the alleged wife of support until the trial, and aid in the expenses of the suit.

4. In a suit for maintenance, an allowance of counsel fee for the purpose of aiding the wife in bringing her cause to trial may be granted, though her application for alimony be denied.

---

On bill for maintenance. On application for alimony *pendente lite* and counsel fee. Heard on bill and affidavit, answer and affidavits and rebuttal affidavits.

*Mr. Elmer King* (*Messrs. Vreeland, King, Wilson & Lindabury*, solicitors), for the application.

*Mr. Benjamin W. Ellicott, contra.*

EMERY, V. C.

On a bill for maintenance and support, application for alimony *pendente lite* and counsel fee is made by the wife (*née* Laura Jane Tyack), and calling herself Laura Jane Oram, on her affidavit of a ceremonial marriage in December, 1895, with proof of defendant's contribution until September, 1899, toward her support and that of her child, born in June, 1896. Up to this time defendant, as she says, acknowledged her as his wife and the child as his, but since that time support has been refused and he has refused to live with her as his wife. At the time of the alleged marriage, the parties both lived in or near Wharton, in the county of Morris, but the marriage took place, as complainant swears, at the city of Hoboken, and was performed by Rev. Dr. Houghton, then rector of a Protestant Episcopal church, in Hoboken, the parties giving not their true full names, but being married under the names of Thomas Williams and Jane Tyack. A certificate

of a marriage by persons under such names was made by the minister and is now in complainant's possession. The marriage, as complainant says, was to be kept secret during defendant's mother's lifetime, and after the ceremony, the parties do not seem to have at any time lived together under the same roof as husband and wife, but the defendant did visit complainant, after the time of the alleged ceremony, at the residence of her brother in Newark. Defendant's affidavit in reply denies specifically the ceremonial marriage sworn to by complainant or any other marriage to complainant under the name of Williams, or otherwise. He admits contribution to her support, but denies any acknowledgment or recognition of her as his wife at any time. He further admits that in 1898 and 1899 complainant used his name and held herself out as his wife, but says that this was done to cover her disgrace, and that in the fall of 1899, he refused to have anything further to do with her, or to support her in any way, and challenged her to prove her marriage. Complainant's affidavits in rebuttal, besides her own affidavit as to receiving letters and checks by defendant and addressed to her as Laura Oram, which are admitted by defendant and other circumstances showing recognition of the marriage, produces affidavits of members of her family and also of members of defendant's family—his sister, brother-in-law and brother—all showing specific instances of the defendant's admission of his marriage to complainant. These admissions to members of his own family were made after his mother's death, in 1897, and before his father's death, in 1899, and after these admissions to members of his family and up to the time of his father's death, all of the members of his family, as their affidavits further state, recognized complainant as his wife, and some of them (including his father) visited complainant and her child at the house of her father, with whom she has lived since 1898. Defendant has not denied any of these statements as to specific admissions, and as to the recognition of the marriage, his case, upon this application, rests on his general denial that he ever at any time

"lived with complainant as his wife, or treated her as his wife, or introduced her as his wife, or visited her as his wife, or either publicly or privately acknowledged her as his wife, or her child as his child."

He states that complainant, while in England (where she says her child was born), and after her return in 1897, adopted the name of Oram for herself and child to deceive the people and the public into the belief that she had been married to defendant, and inasmuch as the conversations of defendant's sister and brother-in-law specifically inquiring as to his marriage were made because of reports they heard as to his marriage, the criticism of defendant's counsel that the defendant's admissions as to the marriage, set out in one or more of the affidavits, although they show admissions of a marriage, do not show a marriage to complainant, is too technical. That any other marriage than one with complainant was rumored, or was referred to or recognized by the family, must, in the situation of all the affidavits, be shown by the defendant. Besides these verbal admissions, with the family recognition following, it further appears that after the father's death, his children, with their wives and the husband of the daughter, united in the execution and acknowledgment of a deed, and that defendant and complainant were described therein and executed and acknowledged the same as Thomas W. Oram and Laura Jane Oram, his wife.

On the entire affidavits, and in the absence of any sufficient explanation by defendant of his specific admissions of the marriage, complainant has shown such a *prima facie* case of recognition of the marriage relation to defendant after the alleged ceremony, as to entitle her to an allowance *pendente lite* for the expenses of her suit to establish the marriage. As to counsel fee and expenses of suit, the additional reason appears in the statements of defendant's affidavit and answer, that in the fall of 1899, he refused complainant's application for further support, basing it on his denial of their marriage, and declared that she would have to prove it in court. The complainant had then but little means and is now without means to undertake a litigation in which the truth or falsity of her claim is to be ascertained. It would seem from defendant's declarations made in 1899, his subsequent continued refusal to support or have any dealings with complainant, and from his present defence, that the actual marriage to complainant, on which the suit is based, is to be vigorously contested, and to prove it will probably involve on

complainant's part an expense which she personally cannot bear. A denial of means to carry on her suit might, and probably would, deprive her of the right to a trial of her claim, and in view of the status of the case as to the defendant's admissions and acts in reference to his marital relation to complainant, she is entitled to a full hearing of the claim and to have from the defendant a contribution toward the preparation of the cause.

Alimony *pendente lite* must, however, be denied, because of the long delay of complainant in filing the bill. For over ten years the complainant has received no support from defendant for herself or her child, and has been supported by her own small means aided by the members of her own family. In view of defendant's denial under oath of the marriage ceremony sworn to by complainant only, and also of the statement in his affidavit (which has not been denied by complainant) that in or about September, 1899, he finally refused to support her further, because he denied her claim to be his wife, and challenged her to prove the claim in court, the status as to support which has been continued for over ten years, should not be changed pending the trial of the cause.

The legal principles controlling decision on the application are, I think, clear. Where a bill for alimony is based on an actual marriage, and on application by the wife for temporary alimony and expenses, the actual marriage set up is denied by the alleged husband, the wife must establish by evidence other than her own affidavits, facts so corroborating her claim, as to make a reasonably plain case of the existence of the marriage relation, in the absence of sufficient explanation or proofs by the alleged husband. Proof of the full or conclusive character which might be necessary on final hearing is not required, but the mere uncorroborated denial of the marriage by the defendant under oath, is not of itself and under all circumstances sufficient to deprive the alleged wife of support until the trial and aid in the expenses of the suit. In *Brinkley* v. *Brinkley* (*1872*), *50 N. Y. 184,* &c., the cases and authorities are fully examined. In our own courts, *Vreeland* v. *Vreeland* (*Chancellor Zabriskie, 1866*), *18 N. J. Eq.* (*3 C. E. Gr.*) *43*, states the general rule that where there is a controversy as to the existence in

fact of the marital relation the *ex parte* affidavit of the wife is not sufficient for an order for temporary alimony and expenses, where the evidence on the point of marriage is conflicting and contradictory, and where there was no proof that the complainant was ever acknowledged or treated as defendant's wife openly or publicly for any period. But the statement that where the fact of marriage is denied, cohabitation as man and wife must be proved, if intended to exclude any other kind of proof, is, I think, too broad, and, as a statement of law, was certainly *obiter*.

The question of the nature and effect of the alleged husband's admissions and conduct as corroborating the wife's claim of an actual marriage depends upon the special circumstances of each case, and distinct and specific admissions of the marriage, not denied or explained by the defendant on the application for alimony, may, for the purposes of alimony *pendente lite* and counsel fee, be as effective, I think, as cohabitation. Where an actual marriage is admitted, but the lawfulness of it is questioned, other considerations may be involved, and many of the cases cited are of this character.

The allowance of counsel fee for the purpose of aiding the wife in bringing her cause to trial as one which she was entitled to present fully, while the application for alimony is denied, has been followed in other courts. *Mann* v. *Mann,* cited *2 Am. & Eng. Encycl. L. (2d ed.) 103; affirmed, 75 N. Y. 614.* In this case there was no reason for the refusal other than the doubtful outcome of the wife's case, and not as here the specific reasons of laches.

I will hear counsel on the amount to be allowed for counsel fee, before signing order, if desired.