1874.] People ex rel. Grissler et al. *v.* Dudley et al. 323

Statement of case.

The People ex rel. Gottlieb Grissler et al., Appellants,
*v.* Henry Dudley, Committee, etc., et al., Respondents.

S. being the lessor of certain premises, and also mortgagee of the lease and term, took possession under a warrant of dispossession against the lessees. He then foreclosed his mortgage; this by its terms was made subject to rents, covenants, etc., of the lease. The complaint in the foreclosure suit prayed, and the judgment directed, the sale of the premises and leases mortgaged ; neither contained the clause of the mortgage, that the term conveyed was subject to the payment of rent. The judgment directed the sheriff to deduct from the proceeds of sale all rents due upon the mortgaged lease. The relators were parties to the foreclosure suit, and became purchasers upon the sale. *Held*, that the sale was simply of the lease, with its correlative obligations; that by the purchase relators became assignees of the lease and term, and took subject to the obligation to pay rent, which had not been released or extinguished.

The lease given by S. included premises owned by him, and also other premises in which he had a leasehold interest. He died, leaving a will by which he devised and bequeathed all his real estate, and the residue of all his estate to his son N. *Held*, that there was sufficient unity of a right to possession in N., and the executors of S., as joint owners of the lease and representatives of the lessor, to justify proceedings instituted in their names jointly, to dispossess the relators for non-payment of rent.

Apportionment of rent, in cases where it is permitted, is for the benefit of the owners of the rent, and the omission to apportion is not a matter of which the tenant can complain, unless something has transpired to relieve him from liability to pay the whole rent.

Proceedings to dispossess a tenant for non-payment of rent are not invalidated because of demand of the rent with interest; the landlord is entitled to interest, as an incident to the principal, from the time of the default in payment.

The subject expressed by the title of an act entitled " An act to amend the Code of Procedure," fairly embraces the jurisdiction or practice of all the courts of the State. The act, therefore, of 1870, thus entitled (chap. 741, Laws of 1870), is not repugnant to the constitutional provision requiring local bills to contain but one subject which must be expressed in its title (Const., art. 3, § 16), because of its containing a provision extending the jurisdiction of the justices of the District Courts of the city of New York, throughout the city.

(Argued June 18, 1874; decided September 22, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department affirming upon *certiorari* a judgment of a justice of one of the District Courts in the city of New York, made in summary proceedings under the statute to remove the relators from certain premises in said city for nonpayment of rent. (Reported below, 1 Hun, 102; 3 N. Y. S. C. R. (T. & C.), 179.)

In 1867, Joseph R. Stuyvesant, late of the city of New York, deceased, was the owner of two lots on Third avenue in said city, known as Nos. 158 and 160, and the lessee of two other lots, Nos. 152 and 154. During July, in said year, he made a lease of the four lots, with the buildings thereon, to Browning and Moore for ten years, from May 1, 1868; rent $6,000 per annum, payable quarterly. The lessees made improvements to the amount of $50,000.

In August, 1868, Browning and Moore made a mortgage on this lease, and a lease of other property held by them, to Stuyvesant, to secure the payment of the sum of $20,000.

The mortgage recited the lease, and the granting clause, after describing the premises by metes and bounds, contained the following: " Together with all and singular the edifices, buildings, rights, members, privileges and appurtenances thereunto belonging, or in any wise appertaining; and also all the estate, right, title, interest, term of years yet to come and unexpired, property, possession, claim and demand whatsoever, as well in law as in equity, of the said parties of the first part, of, in and to the said demised premises, and every part and parcel thereof, with the appurtenances; and also the said indentures of lease, and every clause, article and condition therein expressed and contained; to have and to hold the said indentures of lease, and other hereby granted premises, unto the said party of the second part, his executors, administrators or assigns, to his and their only proper use, benefit and behoof, for and during all the rest, residue and remainder of the said term of years yet to come and unexpired, subject, nevertheless, to the rents, covenants, conditions and provisions in the said indentures of lease mentioned."

On or about the 2d of April, 1869, Browning and Moore were dispossessed, as the evidence tended to show, for non-payment of rent, and Stuyvesant re-entered into possession of the premises so leased by him.   He subsequently commenced an action in the Superior Court for the foreclosure of the mortgage.   The complaint described the mortgage simply as conveying the premises " with the leases and terms of years of the said Browning and Moore."   The relators Grissler and Fausel had previously filed a mechanics'· lien against the premises and were made defendants in the foreclosure suit. They answered, setting up their lien, claiming it to be in equity a lien prior to the mortgage.   The court held that the answer did not set up a defense, and gave judgment to that effect.   The judgment ordered a sale of the premises, describing them in the same manner as in the complaint, and including the clause above quoted therefrom.   After the usual instructions therein to the sheriff to deduct his fees and any liens for taxes and assessments, it directed him to pay " all rents due by the defendants Browning and Moore, upon the leases mentioned in the mortgage," the plaintiff's costs, and then the amount due on the mortgage.   Upon the sale, the relators became the purchasers.   The sheriff's deed contained the same description and clause as above stated in the complaint and judgment, with the habendum clause as follows: " For the full end and term of years yet to come and unexpired of the said Joseph G. Browning and Jacob W. Moore."

The relators entered into possession of the premises October 11, 1869, under the sheriff's deed, and by themselves and their tenants have since occupied the same.

They refused to pay rent to Stuyvesant, and on the 6th day of March, 1872, proceedings under the statute to remove them were commenced against them by him, which they opposed.   Judgment upon these proceedings was rendered against them, and they brought a *certiorari* to the Supreme Court; but such judgment was affirmed by the General Term.

On about the 13th day of March, 1873, Stuyvesant died,

continuing up to the time of his death landlord of all of the said premises, and leaving a last will and testament. By such will he appointed one of the respondents herein, Nicholas W. S. Catlin, one of his executors, who alone has qualified as such.

By the terms of his said will he gave, devised and bequeathed all his real estate of every kind to his son Nicholas W. Stuyvesant, and the residue of his estate after compliance with the provisions of the will. Before his death Nicholas had become insane, and on the 24th day of April, 1873, on a commission *de lunatico inquirendo*, issued by the Supreme Court, he was found to be a lunatic, and a commission was issued committing the care and custody of his person, and the management and control of his estate, to Henry Dudley, one of the respondents.

Nicholas authorized Dudley to demand such portions of the rent accruing under the terms of said lease as might be due him, either separately or in conjunction with the said Dudley as committee; and thereupon Dudley demanded the whole of the rent due under the terms of the lease for the quarters ending May 1st, August 1st and November 1st, 1873, with interest from the respective periods when the same became due, but the relators refused to pay, and thereupon these proceedings were commenced.

*John J. Townsend* for the appellants. A statute affecting the jurisdiction of the District Courts of New York city is local. (*Huber* v. *The People*, 49 N. Y., 135; *Gaskin* v. *Meek*, 42 id., 186; *The People* v. *O'Brien*, 38 id., 193; *The People* v. *Hill*, 35 id., 449; *People* v. *Alden*, 26 How., 166.) The provision of chapter 741, Laws of 1870, entitled " an act to amend the Code of Procedure," extending the jurisdiction of said courts in summary proceedings against lessees (sec. 4) is repugnant to article 3, section 16, of the Constitution as the subject is not expressed in the title, and it is therefore void. (*People* v. *Suprs. of C.*, 43 N. Y., 10; *People* v. *Hill*, 35 id., 449.) After the lessors re-entered the covenant to pay rent was extinguished. (Cruise Digest, tit.

28, "Rents," chap. 3, § 4; Gilbert on Rents, 149 ; *Astor* v. *Hoyt*, 5 Wend., 617 ; *Spencer's case*, 5 Cow., 16.) The direction in the judgment of foreclosure as to payment of rent was not equivalent to a redemption. (*Robinson* v. *Bryan*, 25 N. Y., 321 ; 5 Cow., 448 ; *Jackson* v. *Hakes*, 2 Caines, 335.) The appellants take for the balance of the term by estoppel. (1 Kent Com., 414.) In order to sustain summary proceedings it must appear clearly that the conventional relation of landlord and tenant existed by agreement, not by operation of law. (*Campbell* v. *Mallory*, 22 How., 186 ; *Hill* v. *Stocking*, 6 Hill, 314 ; *Benjamin* v. *Benjamin*, 5 N. Y., 383 ; *People* v. *Simpson*, 28 id., 55 ; *Roach* v. *Cozine*, 9 Wend., 227 ; *Sims* v. *Humphrey*, 4 Den., 185 ; *People* v. *Bigelow*, 11 How., 83 ; *Russell* v. *Russell*, 32 id., 400.) They cannot be used to enforce a right of re-entry for breach of other covenants aside from those for payment of rents. (*Wilson* v. *Swayze*, 15 Abb., 432 ; *Beach* v. *Nixon*, 9 N. Y., 35.) The rents were apportioned by the act of the landlord. Woodfall, 361; *West* v. *Lascellis*, Cro. Eliz., 851 ; *Collins and Harding's case*, 13 Co., 57 *a ;* Cro. Eliz., 606, 622.) A court of equity cannot apportion. (*Bliss* v. *Collins*, 4 Mad., 235 ; S. C., 5 B. & A., 876, 884; *Nellis* v. *Lathrop*, 22 Wend., 121, 125 ; *Oakley* v. *Schoonmaker*, 15 id., 226.) Defendants having no joint interest could not join in the proceedings. (*Featherstonhaugh* v. *Bradshaw*, 1 Wend., 134 ; 2 Bac. Ab., tit. "Equity," 175 ; Cro. Jac., 613; 2 Keb., 376 ; *Doe* v. *Butler*, 3 Wend., 149 ; *Gillett* v. *Stanley*, 1 Hill, 121, 128.) The severance of the reversion destroyed the condition of re-entry. (*Knight's case*, 5 Coke, 55 ; *Twynam* v. *Pickard*, 2 B. & A., 112 ; Woodfall, 289 ; Cole on Eject., 406.) Summary proceedings cannot be maintained without right of re-entry. (*Simpson* v. *Rhinelander*, 20 Wend., 103 ; *Van Rensselaer* v. *Jewett*, 2 N. Y., 141.) It was error to include interest in the demand for rent. (*Lansing* v. *Rattoone*, 6 J. R., 43 ; *Oakley* v. *Schoonmaker*, 15 Wend., 229 ; *Griffin* v. *Clark*, 33 Barb., 48.) No sufficient demand of the rent was shown. (3 R. S., art. 2, tit. 9, chap. 8;

*Wolcott* v. *Schenck*, 16 How., 450; *Van Rensselaer* v. *Jewett*, 2 N. Y., 141; *People* v. *Gross*, 50 Barb., 231.)

*Geo. V. N. Baldwin* for the respondents. The provision of chapter 741, Laws of 1870, extending the jurisdiction of the District Courts, is not local. (*Healey* v. *Dudley*, 5 Lans., 115, 124, 125; *People* v. *Suprs. etc.*, 43 N. Y., 21.) Interest on the rent was properly demanded. (*Griffin* v. *Clark*, 33 Barb., 46.) The demand was sufficient. (*Geisler* v. *Acorta*, 9 N. Y., 232.) The purchase by relators constituted them assignees and so liable for rent. (Chap. 240, § 1, Laws of 1849; *People* v. *Stuyvesant*, Sup. Ct., not reported; *Stuyvesant* v. *Grissler*, 12 Abb. [N. S.], 6; *Breese* v. *Barege*, 2 E. D. Smith, 474; *Bascom* v. *Smith*, 34 N. Y., 320.) The conventional relation of landlord and tenant is not confined to the original parties, nor is the remedy by summary proceedings. (*Birdsall* v. *Phillips*, 17 Wend., 463.) Defendants were properly joined in the proceedings. (*Griffin* v. *Clark*, 33 Barb., 46; *Putnam* v. *Ritchie*, 6 Paige, 390–398.)

CHURCH, Ch. J. The general proposition upon the merits attempted to be maintained by the learned counsel for the relators, is that the conventional relation of landlord and tenant did not exist between them and the respondents, and never did exist between them and the respondents' testator, and this is predicated upon the assumption that when Joseph R. Stuyvesant entered into possession of the demised premises the rent became extinguished and the covenants discharged, and that the subsequent purchase by the relators under the foreclosure proceedings was of the unexpired term, free from any agreement or liability to pay rent.

Joseph R. Stuyvesant occupied a double relation to Browning and Moore, the original lessees, and to the premises. He was lessor of the greater part of the premises and mortgagee of the lease and term. He took possession, as appears from the evidence, under a warrant of dispossession against Browning and Moore. But suppose he was in possession both

as lessor and mortgagee, what then are the consequences in connection with subsequent events? It is said, if in as mortgagee of the term, he occupied the position of assignee and took the estate *cum onere*. (5 Wend., 617.) This is doubtless, in general, true, but in that case the mortgagor had an equity of redemption, and the mortgagee a right to foreclose such equity. So, if the landlord was in under a dispossession warrant, the tenant, his assignees or personal representatives, could pay the rent in arrear and hold the premises according to the terms of the original demise. (Laws of 1842, chapter 240.) In either case there was a right of redemption. On the one hand the landlord's right to the premises was not absolute, nor were the lessees' rights, either as tenants or mortgagors, entirely cut off. They could pay the rent and the mortgage debt, and be restored to their original rights. In this condition of affairs Stuyvesant foreclosed his mortgage, and the relators became the purchasers at the foreclosure sale, and the question is, what they purchased. They claim that they purchased the use of the premises for the unexpired term, free from the obligation to perform the covenants in the lease, and from the payment of rent. The respondents claim, in effect, that they purchased the lease subject to the payment of rent. There is a want of precision and definiteness in the foreclosure proceedings which have probably contributed to the litigation between the parties, but we must give them a reasonable construction, with a view of carrying out the intent and purpose of the parties. It cannot be successfully claimed even if the landlord was in possession as mortgagee, that he could not foreclose and sell the lease subject to the payment of rent, and the performance of the other covenants, and this irrespective of the technical obligations assumed in taking possession. In fact such would be the natural result of the transaction. The mortgage is of the lease, and of course subject to payment of rent, and the sale would legitimately be of the thing or interest mortgaged, even if the mortgagee, when he happens also to be the lessor and in possession, might sell an absolute term free from rent.

Looking at the proceedings in this case, we find, in the first place, that the mortgage recites the lease to Browning and Moore, and also a lease from another party to them, of premises adjacent to those in question, and the indebtedness to Stuyvesant, and then follows the granting clause describing the premises, and specifying all the estate and right of the party to the term of years unexpired, and also the said indentures of lease, "subject nevertheless to the rents, covenants, conditions and provisions in the said indentures of lease mentioned."

The complaint simply described the mortgage as conveying the premises "with the leases and terms of years yet unexpired of the said Browning and Moore." The demand for judgment was, that all persons be foreclosed of all equity of redemption, in the "said mortgaged premises," and that the same be sold, etc. The relators answered, setting up a lien under the mechanics' lien law, which, although filed after the mortgage, was claimed to be prior in equity. After the usual order of reference to ascertain the amount due, the court rendered judgment, holding that the answer did not contain a defence. The judgment ordered a sale of the premises, and out of the moneys arising therefrom, directed that the sheriff should deduct his fees, and any liens for taxes or assessments, "all rents due by the defendants Browning and Moore upon the leases mentioned in the mortgage," the plaintiff's costs, and then the amount reported due upon the mortgage. The description of the premises by metes and bounds is followed by the same clause above quoted in the complaint as to the leases and unexpired term. The deed contains the same clause : *habendum* clause, "for the full end and term of years yet to come and unexpired of the said Joseph G. Browning and Jacob W. Moore." It would have been more definite if the clause in the mortgage had been inserted, that the term conveyed was subject to the payment of rent, etc., specified in the leases, but by implication, this is the legal effect of the transaction. The leases and term were mortgaged, the complaint prays for the sale of the

1874.]  PEOPLE ex rel. GRISSLER et al. *v.* DUDLEY et al.  331

Opinion of the Court, per CHURCH, Ch. J.

premises and leases mortgaged, the judgment directs the sale of the leases with the premises, and the deed transfers the same. The sale was of the thing mortgaged, nothing more and nothing less, and that was the leases, subject to rent. The relators were parties to the foreclosure suit, and knew all the facts. If anything more was intended we must presume that it would have been expressed. By the purchase the relators became the assignees of the leases and term, and they took them with the correlative obligations. The obligation to pay rent had not been released or extinguished so as to discharge Browning and Moore or the purchasers under the foreclosure. At most the obligation was only suspended until the sale, and then revived. The obligation was a part and parcel of the leases purchased, and rendered the relators liable for its fulfillment. This result is confirmed by the facts stated in an affidavit of one of the relators, found in the record, that buildings to the value of $50,000 had been erected on the property, and that the use of the premises exceeded the rent received in the leases. The purchase being for $30,000, considerably less than the amount of the rent for the unexpired term, renders it highly improbable, to say the least, that the intention was to either sell or purchase, discharged of rent, and we can perceive no ground for maintaining that such was the legal effect of the transaction.

It is urged that the provision in the foreclosure judgment for deducting from the moneys realized in the sale the amount of unpaid rent was an error; that it was not claimed in the complaint, and that such rent was not a lien. The judgment was affirmed in the Commission of Appeals,* and is not before us for review. It must be deemed valid and binding in every respect. Whether strictly regular or not, the effect of the judgment and sale was to give the relators the benefit of a redemption of the lease under the statute, as well as a redemption under the mortgage. They occupied, after the sale, precisely the position as to the premises which Browning and Moore would have occupied if they had paid the

* See Catlin, Executor, etc., v. Grissler, 57 N. Y., 363.

rent in arrear, and the mortgage debt. In an action of eject-
ment by Stuyvesant against the relators, it was held that the
former was estopped from denying the existence and validity
of the lease after the sale, and the right of the latter to the
same, subject to the payment of rent. (12 Abb. [N. S.], 6.)
The General Term, in this case, and also in a similar proceed-
ing previous, held that, by the sale, the forfeiture under
the lease was waived. The conclusion arrived at, in every
instance where the question has arisen, is the same, viz., that
the relators, by the purchase, became assignees of the lease,
and as such liable for rent.

It is objected that the justice of the District Court before.
whom these proceedings were commenced had no jurisdiction,
because the premises are not located in his district. Chapter
189 of the Laws of 1863, to amend the Revised Statutes in
relation to summary proceedings, restricted the jurisdiction
of these justices to cases where the premises were located in
the same district. This act was superseded by chapter 741,
of the Laws of 1870, entitled " an act to amend the Code of
Procedure," by giving these justices jurisdiction in cases
throughout the city of New York; but it is claimed that this
statute violates that provision of the Constitution requiring
private or local bills to contain but one subject, which must
be expressed in the title. (Const., art. 3, § 16.) I agree with
the appellants' counsel that the provision in question is local,
standing by itself. It relates exclusively to the officers and
property in a definite local division of the State, and to per-
sons owning property there. (38 N. Y., 193.) The answer
to the point, I think, is, that it is fairly embraced within the
title. The Code of Procedure treats of the jurisdiction and
practice of all the courts of the State, including the District
Courts of the city of New York. (Secs. 9, 10, 66.) Among
the courts specified are several local courts besides the one in
question, and the provisions relating to all these courts are
but parts of a general judicial system of practice created by the
Code. An act to amend the Code might therefore legitimately
contain provisions relating to the jurisdiction or practice of

any one or more of the courts of the State.   Each provision cannot be regarded as an independent subject, but part of a general subject.   The title it is true is quite general, but it is necessarily so from the nature of the subject.   Besides, the act of 1863 is as obnoxious to this objection as the act of 1870, and if both acts are void the justice acting in this case had authority under the Revised Statutes.   (2 R. S., 513, § 28.)

It is claimed that the respondents could not institute these proceedings jointly, that the rent was apportioned by the testator, or at all events that there was no default until they were apportioned between the respondents.   It is very clear that Stuyvesant did not apportion the rent.   All his real estate, and the residue of all his estate, he devised and bequeathed to his son Nicholas, who is represented in this case by Dudley, and the leasehold interest in two of the lots went to the executor as personal assets under the statute, only for purposes of administration. (2 R. S., 83.)   There is not a word in the will indicating an intent to apportion the rent among the several lots.   On the contrary the inference is that the interest in the entire lease was intended to go to the son.   Apportionment, in cases where it is permitted, is for the benefit of the owners of the rent or the reversioners. Ordinarily it is against the interest of tenants, and the omission to apportion is not a matter of which they can complain. If the several owners of a lease are disposed to treat it is an entire contract, the tenant cannot object and insist that it shall be divided into several contracts, unless something has transpired to relieve the tenant from a just liability to pay the whole rent.   This general principle is deducible from the cases upon the subject.   (2 Kent's Com., 469; Bacon's Ab., tit. "Rent," m. p. 517; 2 East, 575 ; 15 Wend., 464, and cases cited.)   Though tenants in common or joint owners may apportion in certain cases, they are not obliged to do so. (5 T. R., 246.)   There is an apparent impropriety in putting the heir and executor into possession of the whole premises, but this results from the joint ownership of the lease.   They

both represent the lessor as landlord. The statute provides for removing any tenant for non-payment of rent, and that " any landlord or lessor, his legal representatives or assigns," may make an affidavit, etc.

We think that there is sufficient unity of a right to possession, as joint owners of the lease and representatives of the lessor, to justify the proceedings in the form in which they were commenced. (6 Paige, 390.) Indeed without an apportionment, which as we have seen they were not obliged to make, no other mode could be adopted. The tenants cannot be injured. They were obliged to pay the rent, and there is no dispute but the respondents represent the whole interest of the lessor in the lease, and for the purposes of these proceedings they must be regarded as the landlord. At all events the relators having by a failure to pay rent incurred the penalty of removal they should not be permitted to interpose the technical objection involved in this point. As to the question of interest, the landlord was entitled to interest from the time of the default in not paying the rent when it became due.

It was an incident to the principal debt, and the proceedings are not invalidated by the demand of rent with interest. (See 33 Barb., 46.)

Substantial justice has been done by the judgment of the Supreme Court, and it must be affirmed.

All concur.

Judgment affirmed.