# SUPREME COURT.

ELISHA HURLBURT, BRADFORD R. WOOD and JOHN KIRK-
PATRICK agt. A. BLEECKER BANKS, Mayor of the City of
Albany, WILLIAM N. S. SANDERS, Chamberlain of the City
of Albany, and MARTIN DELEHANTY, Clerk of the Common
Council of Albany.

*Constitutional Law — Injunction to restrain municipal officers — proper
parties.*

Where the title of an act fairly and reasonably announces the subject, and
that is a single one, if the various parts thereof have respect or relate to
that subject, it is a compliance with the provision of the Constitution,
that "no local or private bill shall embrace more than one subject, and
that shall be expressed in its title " (*state Constitution, art.* 3, *sec.* 16).

The scope, the object of the bill need not be stated in the title, but the
"subject," *i. e.,* the thing legislated upon, must be disclosed, and the
act can embrace only that one. What the act proposes to do with the
"subject" need not be stated in its title, nor the machinery to be put in
operation disclosed. It is enough if the subject of legislation be stated.

The general subject of local improvements includes not only the plan and
construction of contemplated work, but the means by which the work
may be accomplished, the proceedings necessary to be adopted for
assessing and paying the expenses, and the remedies to parties for
redress of grievances arising out of their construction.

*Held,* therefore, that the act entitled "An act in relation to that portion of
the Great Western turnpike road, commonly known as Western avenue,
lying between Snipe street, in the city of Albany, on the east, and the
west line of the proposed new boulevard, intersecting the said road west
of Allen street, in the said city, on the west " (*chap.* 445, *Laws of* 1876),
is not in violation of said constitutional provision, and an injunction
restraining the issuing of bonds pursuant to its provisions will not be
granted.

*Held,* second, that the act, although it provides that the assessment, which
is to be made upon the owners of property fronting upon the avenue,

Hurlburt agt. Banks.

shall be made as prescribed in certain other laws therein referred to, is not in conflict with the provision of the Constitution which declares that "no act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed to be a part of said act, or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act" (*state Constitution, art.* 3, *sec.* 17).

*Held*, third, that the provision of the Constitution which declares that "the legislature shall not pass a private or local bill in any of the following cases: ＊ ＊ ＊ Laying out, opening, altering, working or discontinuing roads, highways or alleys, or for draining swamps or other low lands" (*state Constitution, art.* 3, *sec.* 18), does not apply to this case. That provision refers to the ordinary "roads, highways or alleys," the manner of opening, working, altering or discontinuing of which can be readily provided for by general law.

*Held*, fourth, that the act is not obnoxious to any objection founded upon *article* 3, *section* 20 *of the state Constitution,* because it fails " to distinctly state the tax." It does state the tax; it cannot exceed $185,000.

*Held*, fifth, that the act does not contravene the provision of *article* 8, *section* 11 *of the state Constitution,* which declares, "no county, city, town or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation, or become, directly or indirectly, the owner of stock in, or bonds of any association or corporation, nor shall any such county, city, town or village be allowed to incur any indebtedness, except for county, city town or village purposes. This section shall not prevent such county, city, town or village from making such provision for the aid and support of its poor as may be authorized by law." The debt to be paid or liability to be extinguished in this case is not that of the individual tax-payers, but of the municipality.

Since the act of 1872 (*Laws of* 1872, *chap.* 161), which gives to a resident and tax-payer the right to bring an action *to prevent* waste or injury to any property, fund or estate of such county, town or municipal corporation, such resident tax-payer has also a remedy by injunction against officers of a municipal corporation who are proceeding under an act authorized by statute, which statute is repugnant to any constitutional provision restraining them from doing the wrongful act.

Although the act of 1872 allows an action to be brought against officers of a municipal corporation who are about to do wrongful acts, it has not repealed other statutes, nor declared that they are the only necessary parties to such action.

This action is brought by the plaintiffs as residents and tax-payers of the city of Albany, against the defendants, the mayor, the chamberlain and the clerk of the common council of the city of Albany, to restrain them

Hurlburt agt. Banks.

from issuing bonds of the city of Albany to the amount of $185,000, pursuant to the provisions of chapter 445 of the Laws of 1876, which provides for the improvement and ornamentation of certain roads and avenues leading to Washington park.

*Held*, that there is a defect of parties; that a proper adjudication and determination of the rights of all interested in the subject-matter of this action, require the city of Albany and the board of park commissioners should be made defendants, and the injunction asked for should therefore be refused.

*Ulster Special Term, November*, 1876.

MOTION by plaintiffs to restrain the defendants from issuing bonds of the city of Albany to the amount of $185,000 — pursuant to the provisions of chapter 445 of the Laws of 1876.

*Messrs. Wood, Lawson & Moak*, for plaintiffs.

*Messrs. Colvin, Hale & Barnes*, for defendants.

WESTBROOK, *J.*— This cause, most elaborately and carefully argued, presents questions of unusual interest, and it is a source of regret that the pressure of very many official duties and the need of a speedy determination, prevent a more diligent and lengthened examination than is possible for me to bestow upon it.

The plaintiffs are residents and tax-payers in the city of Albany, and may, if the allegations of the complaint are well founded, bring an action of this character under the provisions of chapter 161 of the Laws of 1872, entitled "An act for the protection of tax-payers against the frauds, embezzlements and wrongful acts of public officers and agents." The express language of that statute gives an action " *to prevent* waste or injury to any property, funds or estate of such county, town or municipal corporation by any person residing in such county, town or municipal corporation assessed for and liable to pay taxes therein, or who has paid taxes therein within one year previous to the commencement of any such

action or actions." As the remedy given is a preventive one, it seems to me that the very pith and object of the law are destroyed if it be construed simply to give a tax-payer a standing in court, and yet hampered by old decisions, holding that an injunction to restrain illegal acts cannot issue. An act authorized by statute which statute is repugnant to any constitutional provision, is a " wrongful " one; and as the law of 1872 confers upon a resident tax-payer the right " to prevent " such act, it is not perceived why such legislative provision has not swept away the cases which hold an injunction not to be an appropriate remedy (*See Ayers and others* agt. *Lawrence and others*, 50 *N. Y.*, 192). It is true that if the act of 1876 be unconstitutional, it is possible that a defense may exist as to each bond when an attempt is made to enforce it, and yet such a course would lead to such a multiplicity of actions, so much cost, expense and trouble, and be, also, owing to recent decisions of the supreme court of the United States, when the bond prosecuted should be in the hands of a *bona fide* holder capable of suing in the federal courts, so uncertain in result, that it is safer and better to hold, as is now held, that the plaintiffs, if the theory of their action is correct, have this remedy.

The next question which this motion presents is, are the proper parties defendant before the court? The decision of the matters involved in this action undoubtedly concerns the city of Albany and the board of commissioners of the Washington park. The former is interested not only in the improvement which the act contemplates, but its bonds are those sought to be enjoined. The defendants are its officers charged with the duty of such issue, but they have no personal interest in the question. If issued, the proceeds are to be used in making a city improvement, and the city alone is responsible for their payment. What is true of the city is also true, varying in details, of the park commissioners. They are charged with the duties of caring for the park, constructing its approaches and making the particular improve-

ment which the act contemplates. The proceeds of the bonds are to come into their hands to be used for that purpose. If the injunction is granted, its effect is manifestly to stop and arrest a public work in which the city and the park commissioners are chiefly concerned, and it would seem to be but reasonable that they should have their day in court to be heard upon questions which affect them, and in which their agents, now alone prosecuted, have no interest. It is true that the act of 1872, already referred to, allows an action to be brought against officers of a municipal corporation who are about to do wrongful acts; but whilst it allows them to be prosecuted, it has not repealed other statutes, nor declared that they are the only necessary parties to such action. Sections 118 and 122 of the Code are still in force. As, to use the exact language of the latter section, " a complete determination of the controversy cannot be had without the presence of other parties, the court must cause them to be brought in " (*Code, sec.* 122 ; *People* agt. *Law,* 34 *Barb.,* 494, 509 ; *Allen and others* agt. *Turner and others,* 11 *Gray,* 436). These parties clearly are the city of Albany and the board of park commissioners. Individuals may also be interested, but not directly so as to make them necessary parties. For whatever grievances or rights they may have, they must look to the corporation in which they dwell. If any have contracts with the city or the park commissioners, they must seek their remedy there. Contractors who expect their compensation, or persons who look for payment for damages sustained, out of a particular fund belonging to the individual with whom they made the contract or who has done them an injury, are certainly not proper parties to an action which affects a fund or means not theirs, and out of which they only expected to be paid. And so, also, if particular persons dwelling upon the avenue desire the work to proceed, their dealings and remedies must be with and against the city and park commission. To a greater or less extent, what is true of them is also true of every other tax-payer and resident

of the city, each one of whom has more or less interest in the work, and the making of all parties would be simply impossible. All such are represented by the city, and if that be made a party, their rights are properly represented.

Having reached the conclusion that the act of 1872, and the provisions of the Code are not inconsistent, and that a proper adjudication and determination of the rights of all interested in the subject-matter of this action, require the city of Albany and the board of park commissioners should be made defendants therein, it would follow that the injunction asked should be refused. If, however, the plaintiffs are right in the general objects sought to be attained, they should not be defeated upon this technical ground, but an opportunity should be afforded to bring in all who are interested. To the real merits of the action, then, the opinion will now be addressed.

The act — action under which is sought to be restrained — is chapter 445 of the Laws of 1876, and is entitled, " An act in relation to that portion of the Great Western turnpike road, commonly known as Western avenue, lying between Snipe street, in the city of Albany, on the east, and the west line of the proposed new boulevard, intersecting the said road west of Allen street, in said city, on the west." The act allows the turnpike company to convey to the park commissioners the portion of the road to which, in its title, it refers, but forbids it being closed, or the exclusion of the public from its use as a highway. It then places the grading, improvement and ornamentation thereof, in charge of the park commissioners, to be paid for, in the first instance, by the issue and sale of the bonds of the city of Albany, which issue is sought to be enjoined. It then provides for the payment of the principal of the bonds, by assessment upon the owners of the property fronting upon the proposed avenue, and out of the city at large, in case the fund obtained for that purpose from the owners of the property shall be insufficient; the city at large, until the maturity of the bonds, providing

for and paying the interest. It is claimed by the plaintiffs'
that this law is unconstitutional and void for various reasons,
which will be presently stated.

Preliminarily to a discussion of the constitutional questions
involved, it should be stated that Washington park, in the
city of Albany, was authorized to be established by chapter
582 of the Laws of 1869. Various acts have been since
passed which are amendatory and supplementary thereto, by
which (*chap.* 377, *Laws of* 1870; *chap.* 45, *Laws of* 1872)
approaches, among other things, could be made to the park,
and streets already open selected and taken for that purpose.
That portion of the turnpike road which the act of 1876
refers to, had, previous to such act, and the recent constitu-
tional amendments, been taken possession of by the park com-
missioners, and partially improved, under a lease executed by
the turnpike corporation, which corporation has existed for
many years.

It is said that the law of 1876 is in conflict with article 3,
section 16 of the Constitution of this state, which declares :
" No private or local bill which may be passed by the legisla-
ture, shall embrace more than one *subject*, and that shall be
expressed in the title." It being conceded, as it certainly
must be, that the act in question is "*local*," it is argued that
the bill does embrace more than one " subject," and that that
is not " expressed in the title." In determining this ques-
tion, the exact word used, " subject," must be borne in mind.
The scope, the object of the bill, need not be stated in the
title; but the " subject," *i. e.*, the thing legislated upon,
shall be disclosed, and the act can embrace only that one.
If it can be shown that the law covers more than one " sub-
ject," one thing, it is obnoxious to the objection made.
What the act proposes to do with the " subject " need not be
stated in its title, nor the machinery to be put in operation
therein disclosed. It is enough if the " subject" of legisla-
tion be stated. Webster, in his definition of the word " sub-
ject," uses two quotations to illustrate its meaning : " This

*subject* for heroic song;" "Make choice of a *subject,* beauti-
ful and noble, which   *   *   *   shall afford an ample field
of matter, whereon to expatiate." The author of an essay,
or lecture, in choosing and announcing his "subject," does
not ordinarily declare, in its title, his proposed treatment
thereof, but he simply states upon *what* he is to write or
speak; and he who would know more must read or hear
what is written or spoken upon that topic. Precisely this the
framers of the Constitution had in mind. The "subject" of
the bill should be expressed in the title, and that should be a
single one, and he who wishes to know more, and to learn
what is done must read the body of the bill; his attention is
to be drawn to the "subject" by the title ; he is not to be
deceived by legislation upon any other than the one so indi-
cated, and if he then fails to use his senses he, alone, is
deceived.

This view of the constitutional provision is not a strained
or novel one. In *Matter of Ferdinand Meyer* (50 *N. Y.,*
504) the court of appeals held : " If the title of an act, fairly
and reasonably announces the subject, and that is a single
one, and if the various parts thereof have respect or relate to
that subject, the provision of the Constitution that no local
or private bill shall embrace more than one subject, and that
shall be expressed in its title (*state Constitution, art.* 3,
*sec.* 16), is complied with. The degree of relationship of each
provision is not material if it legitimately tends to the
accomplishment of the general purpose. The general subject
of local improvements includes not only the plan and con-
struction of contemplated work, but the means by which the
work may be accomplished, the proceedings necessary to be
adopted for assessing and paying the expenses, and the reme-
dies to parties for redress of grievances arising out of their
construction.

And in *People* agt. *Briggs and others* (50 *N. Y.,* 553–562),
CHURCH, chief justice, says: " In an act in relation to Lake
avenue it would not be competent to insert provisions

respecting Mount Hope avenue. As to such a bill, Lake avenue would be the subject. So in a bill in relation to education in the city it would be improper to insert provisions in relation to street or police, unless they were in some way legitimately connected with the subject of education."

Cases to the same effect can be multiplied indefinitely (*See, among others, People* agt. *Willson,* 60 *N. Y.,* 507–509; *People* agt. *Dudley,* 58 *N. Y.,* 323; *Harris* agt. *People,* 59 *N. Y.,* 599–602; *In the matter of Volkenning,* 52 *N. Y.,* 650; *People ex rel.* agt. *Havemeyer,* 47 *Howard,* 494–509).

An examination of the act of 1876 will, we think, show that it relates to but one subject, and that is the avenue, and the particular part thereof referred to in the title. It is that which is to be conveyed, graded and improved; it is upon that which the money to be raised is to be expended, and every section and clause concerns this single subject. It is true that all which the law requires to be done to the avenue is not stated, nor the machinery devised for that purpose disclosed in its title, but the whole of it relates to such avenue as the "subject" to and upon which legislation is directed. It is the "subject" thereof (to borrow an illustration from the medical profession), as much as the person or body to be operated upon by the surgeon may be said to be his. The first objection cannot therefore prevail.

It is further objected, that as the act of 1876 provides that the assessment which is to be made upon the owners of property fronting upon the avenue shall be made as prescribed in certain other laws therein referred to, it is in conflict with article 3, section 17 of the Constitution, which declares: "No act shall be passed which shall provide that any existing law, or any part thereof shall be made or deemed to be a part of said act, or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act."

It is true, as defendants' counsel urge, that it does not necessarily follow if the part of the act of 1876 which makes

Hurlburt agt. Banks.

this provision for the assessment is invalid, that the whole act is, therefore, also void. It was so held in *The People* agt. *McCann* (16 *N. Y.*, 58), and *People* agt. *Green* (58 *N. Y.*, 295). According to these cases, the remainder of the act might stand, even though the part which makes provision for the assessment should fail, provided such part is not so identified with the general scheme of the enactment that its elimination therefrom would not overthrow the plan. The act is perfect, without these provisions, to authorize a conveyance of the road, to direct its improvement, to issue the bonds, and to provide for their payment by general taxation; but it is also apparent that the payment of the whole debt by the city at large was not contemplated by the law. On the contrary, the principal thereof is to be paid by owners of lots fronting on the road. This is a controlling feature of the statute, and if that is held invalid, it is obvious that the method of paying the cost of the contemplated improvement is destroyed, and by force thereof the general scheme of the act defeated. If this objection, then, be well founded, it reaches the entire law, and must be so discussed. To meet the point fairly, we ask: Does the Constitution mean that when a charter to a city has been given, and the mode and manner of taxation for municipal purposes defined, that a special law subsequently passed, authorizing money to be raised for a specific purpose, and then providing that the same shall be assessed, levied and collected in the manner provided in the law giving the charter, that such act is void? Such a statute certainly does not, by its express terms, "provide that any existing law, or any part thereof, shall be made or deemed a part of said act," nor does it "enact that any existing law, or any part thereof, shall be applicable." It is a law perfect to authorize a tax, and one which, without declaring any other law " a part thereof," in fact, or "applicable" thereto, simply provides that certain well known and understood modes and forms of assessment which the city possessed shall be used to obtain the money. If such an enactment is void, our session

Hurlburt agt. Banks.

laws must be incumbered.to an extent which can scarcely, be conceived. The clause of the Constitution which we are considering should, when no apparent evil follows from so doing; have a strict reading, and not be strained beyond its exact words, which seem to me only to cover those cases in which, by the express language of the act, some other is made a part thereof, or is directly declared to be applicable thereto. The case with which we are dealing certainly presents no evil within the spirit of the provision. It fixes a sum of money to be raised by a loan, directs the mode of its expenditure, and when providing for the payment, refers to certain laws as the mode and manner of assessment. If the legislature should create a right of action where none before existed, and should then declare that the mode and manner of procedure should be that prescribed by the Code, it could scarcely be claimed that such act was void, because the whole Code, containing several hundred pages, was not re-enacted section by section. The case put is the one before us. The machinery for taxation was devised and prescribed by the charter. A new tax is imposed, and the manner of its assessment and collection is declared to be that given by the charter. Is it void? Should the charter again be re-enacted section by section, and must this be repeated again and again for all succeeding years whenever the city needs a special act? And must the same reasoning apply to every village, city, town and county in this state, and to the state itself, when money is to be raised by tax for any purpose whatsoever? It must, if the plaintiffs are right. "*Argumentum ab inconvenienti plurimum valet in lege*" is a maxim which applies with great force to the affirmative of these positions. Cases may be supposed in which the application of this constitutional provision would be wise and salutary. If a city is chartered, the provisions relating to that of another should not be declared to be a part thereof, or applicable thereto, and many others of a similar character may be called to mind. But, with the machinery of taxation applicable to a locality once

provided, no reason is seen making it necessary, when a tax is imposed for any purpose, to re-enact every provision as to its assessment and collection. No such requirement is reasonable, and not only the inconvenience of such a rule, but its impossibility when applied to practical legislation, compel us to hold that this law is not void on account of the objection we have just considered.

It is further urged that article 3, section 18, of the Constitution applies, which declares that, " the legislature shall not pass a private or local bill in any of the following cases. * * * . Laying out, opening, altering, working or discontinuing roads, highways or alleys, or for draining swamps or other low lands."

Is this part of Western avenue, which had, previous to the act of 1876, and this constitutional amendment, been selected as an approach to the park, and already leased to the park commissioners, either a road, highway, or alley, in the sense these words are used in the Constitution? It is a highway, undoubtedly, in a general sense, but it can scarcely be deemed one of these of which the Constitution speaks. That refers to the ordinary " roads, highways, or alleys," the manner of opening, working, altering or discontinuing which can be readily provided for by general law. No general law applicable to this case can be passed; and it is manifest as the same section subsequently provides, that " the legislature shall pass general laws providing for the cases enumerated in this section," that this clause of the Constitution cannot, and does not, prevent a special act being passed in relation to a road leading to or passing through a park of any city, the provisions of which must always be in accordance with the particular plan in each case.

Neither is the law, in my opinion, obnoxious to any objection founded upon article 3, section 20 of the Constitution, because it fails " to distinctly state the tax." It does state the tax; it cannot exceed $185,000. It does not, it is true, require the commissioners of the park to expend

the whole of that sum, but they must use so much as the work authorized shall cost. Must an appropriation in every case state with precision the exact cost of the work to be done; and if it fails so to do is the law void? What this law declares in words, every other, directing money to be raised for a particular purpose, does practically, without so declaring. Only so much, in any event, of an appropriation made can be legally expended as the object proposed costs. More than this is illegal, though not so expressly enacted in the law, and I fail to see that an expression in language of a thought which must always, in a similar case, be understood without expression, can avoid the law which so specifically declares.

It is also argued that article 8, section 11 of the Constitution is contravened by this act. That provision declares: " No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become, directly or indirectly, the owner of stock in, or bonds of any association or corporation, nor shall any such county, city, town or village be allowed to incur any indebtedness, except for county, city, town or village purposes. This section shall not prevent such county, city, town or village from making such provision for the aid and support of its poor, as may be authorized by law."

The reasoning employed is as follows: It is the duty of the persons owning property upon the avenue to bear the cost of the improvement — it is their debt — and while the act recognizes this by requiring them in the end to pay it, the city advances for them the money in the first instance, and then at the end of five years receives back the amount from them without interest. The same argument would invalidate every law which authorizes any " county, city, town or village" to borrow money for any purpose. The objector would argue, the tax-payers of such " county, city, town or village" should pay this money which is to be raised by a debt created by the municipality — it is their debt —

and, and therefore, the credit of such municipality is loaned to individuals, who then only pay after a lapse of years, instead of paying immediately what they owe. The error of the reasoning is in the premise. Neither in the case before us, nor in the one supposed, is the debt to be paid or liability to be extinguished, that of the individual tax-payers, but of the municipality. The corporate body in the end only discharges its own obligations by a tax upon its tax-payers, assessed either locally or generally, and in such proportions as the law shall provide. If in this case the city of Albany compels a locality to pay the principal of the loan, and the entire community the interest, neither the credit of the municipality nor its money has been loaned, for it has in the first place but paid its own liabilities, and then apportioned the debt it has incurred in so doing among the various tax-payers as the law provided. The original work upon the road was done for the city, the liabilities therefore were its liabilities, and the bonds to be issued are to be so issued to extinguish its own indebtedness. The assessment to be made upon owners of property fronting upon the avenue is simply a tax upon them to pay the city indebtedness, levied upon them in a larger proportion than others, because they are more benefited than such others by the improvement. The fact that they pay a larger share of the city debt incurred in the improvement of the avenue, makes them no more original debtors for the work than other tax-payers, who likewise bear a portion of the burden, though in a less degree, because by the original expenditure of the corporation they were less benefited.

We have now examined in detail the various objections which have been made to the act of 1876, and are constrained to overrule them all. It is a grave responsibility for any court to hold that a law passed in accordance with the forms of the Constitution is invalid because in its provisions it violates that instrument. That duty would not, however, be evaded in a clear case; but such an one is not, in our judgment, now before us. On the contrary, whilst the questions

Hurlburt agt. Banks.

are interesting and novel, we think that no part of the fundamental law has been violated, either in its letter or spirit, With the objects and purposes of the act we have been considering, and the policy thereof, we have nothing to do. These questions belong to the legislative department of the government. When that has only exercised its constitutional prerogatives, it cannot be interferred with, because courts differ from it as to the policy of legislation. If the law is unwise, impolitic and burdensome, though not unconstitutional, the legislature must correct it. Courts are powerless.

The injunction asked for is refused, with ten dollars costs of motion.

NOTE.— By consent of counsel, as an order granting or refusing an injunction is not appealable to the court of appeals, a mandamus commanding the issue of the bonds was granted by judge WESTBROOK at special term. This order was immediately affirmed *pro forma* at general term and an appeal at once taken to the court of appeals, which latter court has just (December, 1876) affirmed the conclusions reached in the foregoing opinion as to the constitutionality of the law, which was the subject of litigation.—[REP.