HARKNESS, ADMR., v. SCHIELY ET AL.

PROPERTY OWNER ENTITLED TO RETURN OF ASSESSMENTS, WHEN—

> Where an owner of certain premises abutting upon a certain street, leases the same with the provision that the lessee, in addition to an annual rental, is to pay all taxes and improvement assessments, and the street is afterwards paved when a street railway secures a franchise in the said street, and in return it agrees to repay the assessments that were made for paving the same; *Held*, that such money belongs, and should be paid to the property owner and not to the lessee of the property.

MARVIN, J.

This case comes here upon the petition in error from the judgment of the court of common pleas of this county. Suit was brought in the court of common pleas by Charles W. Harkness, as administrator, against these heirs of Schiely, and the facts here agreed to, are substantially these :

Michael Schiely was the owner of certain real estate in this city fronting on Wilson avenue. On the 19th day of November, 1873, he executed a lease of that property to Stephen V. Harkness ; the term to begin on the first day of December, 1873, and continue for the period of twenty years. Harkness was to pay a certain annual rental; and in addition to that, the terms of the lease are that he shall pay to Schiely all the taxes and assessments for improvements that shall be levied upon the property during the continuance of the term granted by the lease. In 1888, on the first day of March, Harkness died. The administrator, Charles W. Harkness, then took into his possession this lease-hold estate as a part of the personal estate of the deceased, Stephen V. Harkness. Some time before the lease expired—the time is not given in the agreed statement of facts—but before the assessments which are the subject of controversy here, Schiely died, intestate, leaving the defendants here, as I have already said, his heirs at law. On the 8th of September, 1892, the city of Cleveland levied an assessment of $5.25 per foot front for the improvement, grading and paving of Wilson Avenue: and on the 10th day of September, 1893, the city levied a further assessment of $1.75 per foot front for the same purpose, upon this same property. Instead of paying these assessments to Schiely or to the owners of the property who succeeded to Schiely's estate by inheritance, by consent and agreement all around the assessments were paid directly to the city officers, so that they never passed through the hands of the Schielys.

The improvement was made upon the street, and on the 10th day of January, 1894, that being one month after the expiration of the term granted by the lease, while Harkness, the administrator, was still in possession of these premises, but claiming no right to such possession other than that certain buildings had been erected upon the land by Harkness, and that the terms of the contract between the lessor and lessee had not then been fully complied with as to the payment for such buildings, and when he was holding on only for the purpose of having an adjustment in regard to that matter, the Cleveland City Railway Company, being desirous of constructing a street railroad along Wilson avenue, sought the

Harkness v. Schiely et al.

consent of the property owners fronting upon that street, because, under the statute, before a franchise could be granted to the street railway company to construct such railroad, they must obtain and have filed with the proper officers of the city the consents of one-half of the property owners, computed by the foot front. They applied to the heirs of Michael Schiely and obtained such consent from a number of those heirs, but not from all of them. Upon obtaining these consents, and for the purpose of obtaining them, the street railway company promised and agreed with the property owners that it would accept no franchise from the city to construct such railroad, which should not contain a provision that the railroad company would reimburse the taxpayers or the owners of the property who had paid for the improvement of the street such share of that money so paid as would pay for the pavement of so much of the street, along the line of it, as was bounded on the east by a line one foot east of the east rail of the street railway, and on the west by a line one foot west of the west rail of the street railway; this to be counted as the proportionate share that the railroad company would reimburse the abutting property owners for.

On the 19th of February, 1894, the city council passed an ordinance granting the franchise to the street railway company to construct that road. The language of the franchise, so far as it is applicable or necessary to call attention to here, is: "That the street railroad company will pay to the owners of property, and shall, within sixty days after the acceptance of this ordinance, pay to the property owners on such paved portion of said Wilson avenue their *pro rata* share of the amounts heretofore paid by them or their predecessors in title for such pavement as is embraced in a strip sixteen feet in width extending the entire length of the same, and shall pay to the city the cost of a strip of pavement sixteen feet in width of all street intersections."

The language differs somewhat from the agreement made with the property owners. The language of the agreement is that the street railway company will reimburse those who have paid; and the language of the ordinance is that the street railroad company will pay to the property owners on such paved portion of said Wilson avenue their *pro rata* share of the amounts heretofore paid by them or their predecessors in title. In the ordinance the strip to be paid for is spoken of as sixteen feet in width, while in the agreement it was to be bounded by the lines which I have mentioned, and which I suppose are practically the same. The franchise was accepted by the railroad company, and the amount to be paid upon this property, which was under lease to Harkness, is agreed to be five hundred and sixty dollars. That amount the railroad company have, by agreement of the parties, placed in the keeping of one of the banks of this city, and it is drawing interest, and is to be paid to such party as shall be ordered by the court; and the question here is, to whom it belongs—to whom it shall be paid.

The counsel who have presented the case have not found any authority directly in point as we can see, and as we understand counsel to say. We have been equally unable to find any case directly in point. We are cited to cases by counsel for the administrator of the Harkness estate, which clearly establish that where one pays for another, money which ought not to have been paid, and there is a reimbursement on that account, the party who paid is entitled to have the money paid back to him. One of the cases cited is that of *Platts, administrator*, etc., v. *Lean, executor*, etc., 3 Carr and Payne, 561. An attorney's clerk who, having

been sen out to make a collection, accepted 168 pounds less than the amount of the claim, and rather than lose his employment, or for some other reason, he paid from his own money one hundred pounds; but later the debtor paid the entire amount of this claim. The clerk being dead, his administrator brought suit and maintained his action to be himself paid back the one hundred pounds, the court holding that the party who paid the money was entitled to have it back when the debtor paid it to the original creditor; but this, it seems to us, is not based upon the reasoning applicable in the present case. If this money paid by the property owners had been for an amount more than sufficient to make the street improvement, as is sometimes the case when the council levi s a greater assessment than turns out to be necessary, and a part of it is to be paid back, nobody would doubt that that which was to be paid back should be paid to the man who first paid it; and that in such case the administrator of Harkness would be entitled to have that money paid back to him. Such is the fair conclusion to be drawn from the case of *Russell* v. *The Mayor of New York et al.*, 58 N. Y. 330. If this is that kind of a case—if the same reasoning applies to this that applies to that; if it ought to be governed by the same rule, clearly this money should be paid to Harkness. But is it governed by the same rule? The language of the ordinance is that the money paid by the property owner or his *predecessor in title* shall be paid to the property owner. It is not to be said, of course, that the party holding this term for years was the predecessor in title to the heirs of Schiely; but it is difficult to distinguish between the rights of the Schielys to this money, as the facts are, and what their rights would have been if they had purchased from Harkness. It is clear that the purpose of the city council in passing the ordinance granting this franchise was to secure the payment to the property owners of money that had been paid. When these franchises are granted the city council requires something from the railroad company to whom the franchise is granted, and for some reason that seems to be acquiesced in everywhere. It is required usually, where streets are about to be paved, to pay for paving that portion of the street bounded by a line one foot outside of each side of the street railroad tracks. In this case the property owners whose property abutted upon the street where pavement was already made, should be paid on an equality with the property owners whose property abutted on that portion of the street not yet improved. I can think of no reason why the street railway company, as a part of the consideration for its franchise, should pay to the property owners abutting upon the line of the railroad, rather than to the general public, except that for some reason it is conceived that because of the construction of the street railroad, there is a sense in which the abutting property owners are damaged; certainly pavements outside of the tracks will be worn faster than they otherwise would, and there are doubtless other reasons why owners of abutting property ought to be compensated for allowing the street railroad to pass in front of their property. For some reason that is the universal custom, so far as I know. Certainly the manner in which the street in front of this property is used, after the expiration of the term granted by the lease, was of no interest to the lessee other than it was of interest to the public in general, while it might be of great importance to the property owners. If that is the reason why it was proper for the council to require money to be paid, then it seems clear that it should go to the property owners and not to the administrator of Harkness. Harkness paid nothing which was not legally and properly assessed and applied

to the proper purpose. By reason of a subsequent arrangement between the city and the street railroad company a part of that money is to be paid back by the street railroad company to some one. If the property had been sold, the provision of the franchise ordinance is that it shall be paid to the property owner if the money was paid by the predecessor in title. The same reason that would require money in that case to be paid to the property owner would, as we think, require it to be paid to the property owners in this case. The court of common pleas so held, and and we think there was no error in that holding. This question has occurred to me that the judgment was for the defendants, and one of the defendants was the administrator of the estate of Schiely. I do not see what interest the administrator has in this money. It was not a claim existing in favor of any one at the time of Schiely's death, or that grew out of any transaction which occurred before his death. The rights of the Schielys grow out of the fact that they *own* the premises, and not out of the fact that they *inherited* the premises. But it is said by counsel on both sides that there is no controversy about that matter, and it need not therefore be considered; and hence the judgment of the lower court is affirmed.

*Henderson & Quail*, Attorneys for Plaintiff in Error.

*J. M. Jones*, Attorney for Defendants in Error.